## UNITED STATES v. JORGENSEN.
### No. 7061.

Circuit Court of Appeals, Ninth Circuit.
July 24, 1933.

H. E. Ray, U. S. Atty., and Ralph R. Breshears, Sam S. Griffin, and W. H. Langroise, Asst. U. S. Attys., all of Boise, Idaho.

Hawley & Worthwine, Jess Hawley, and Oscar W. Worthwine, all of Boise, Idaho, for appellee.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

SAWTELLE, Circuit Judge.

This is an appeal from a judgment on a verdict in favor of plaintiff-appellee in an action on a war risk insurance policy issued to appellee at the time of his enlistment in the military service of the United States in May, 1918. Appellee was honorably discharged in May, 1919, and the policy lapsed for nonpayment of premium on June 30, 1919. At the time of his discharge, appellee stated that he claimed no disability. He alleged in his complaint that he became totally and permanently disabled while the policy was in force, by reason of having been gassed, and having contracted dysentery, gastric and duodenal ulcers.

Following his discharge from the army, appellee applied for and there were issued to him three life insurance policies, and in the applications therefor he stated that he had never suffered from any ailment or disease of the stomach or intestines, or from any other ailment or disease, while on the trial he contended that his health had been impaired and he had been rendered totally and permanently disabled by reason of having contracted ulcers of the stomach while in the service.

We consider it unnecessary to discuss the facts and circumstances in connection with appellee's application for life insurance, because, as said by this court in United States v. Albano, 63 F. (2d) 677, 681: "These inconsistencies in the appellee's statements and conduct, however, were matters for the jury to determine, and the jury seems to have resolved the question in his favor."

The government assigns as error the denial of its motion for a directed verdict, interposed "upon the ground that the plaintiff has failed to produce or establish by substantial evidence, or by any evidence at all, that he became totally and permanently disabled at any time during the life of his insurance contract, or at any time prior to June 30th, 1919; and upon the further ground that there is no substantial evidence in this case to show permanent and total disability of this plaintiff prior to June 30th, 1919; and upon the further ground that the evidence in this case affirmatively shows that the plaintiff was not totally and permanently disabled at any time prior to the time his policy of insurance lapsed, or prior to June 30th, 1919."

Considering the evidence most favorably to the appellee, it shows that, at the time he was discharged from the service, and for approximately two years thereafter, he was partially disabled, but that his disability was not of such a character as to render him incapable of pursuing with reasonable regularity any substantially gainful occupation. In any event, the evidence fails to show that his disability during said period was of permanent character; that is, it was not based upon conditions which rendered it reasonably certain at the time that it would continue throughout the life of the insured. In fact, we think subsequent events and the physical facts demonstrate that such disability was not, at the time the policy lapsed, total and permanent; and, if it ever became either total or permanent, it was years afterwards.

The physical facts cannot be ignored; and the rule announced by Judge Neterer, speaking for this court in the case of United

States v. McCreary, 61 F.(2d) 804, 808, is apposite here: "The physical facts positively contradict the statements of conclusion of the witnesses, and must control. The court may not disregard them. * * * Judgments should not stand upon statements or conclusions that are not predicated upon facts. * * * The policy is a civil contract. No liability obtains until the conditions are broken, and until broken conditions are proven by a fair preponderance of evidence, no basis for recovery exists. * * * The court is not concerned with the present condition of the appellee, except as it relates to total and permanent disability at the date of discharge, and at all times since that date, and the disability must have had its origin at or prior to the date of discharge, be total, and reasonably certain to be permanent during lifetime."

In the case of Nicolay v. United States (C. C. A. 10) 51 F.(2d) 170, 173, it is said: "Like any other question of fact, the subsequent employment may be of such duration, and be of such a nature, that it conclusively refutes any idea that the insured might have been permanently and totally disabled prior to and during the employment. [Citing cases.]"

See, also, Personius v. United States, 65 F.(2d) 646, decided by this court on June 5, 1933, and United States v. Harth (C. C. A. 8) 61 F.(2d) 541.

■ Appellee testified in his own behalf that he worked for his father in a butcher shop and grocery store, from May, 1919, to November, 1922, at the rate of $120 per month, which amount included his board and room, but that during that period, and up to the time of the trial, he was often sick, and not able to do a full day's work. In 1924 he went to work for a Mr. Zweigart, at the latter's butcher shop, at $40 a week, and continued to work there until March, 1926. His testimony in that connection, on cross-examination, is as follows:

"Q. Now, about your employment: We can assume, I believe, Mr. Jorgensen, that your statement that you had worked from May, 1919, to November 20th, 1922, at a rate of $120.00 per month is correct for the purposes of this case, because you have made that statement? Is that correct? A. Well, counting my living at the home and that, it would probably be about that.

"Q. You are not disputing that statement here? A. No, sir.

"Q. You came to Pocatello, Mr. Jorgensen, and worked for your father in the butcher shop here until you sold out to Mr. Zweigart, isn't that correct? A. Yes, sir.

"Q. The butcher shop, or company, was known as Jorgensen & Sons? A. Yes, sir.

"Q. And you were the 'son,' were you not? A. Well, I have five brothers.

"Q. Well, but were you one of the partners? A. Well, Dad bought the business; he had the money.

"Q. Were you one of the partners? A. Well, yes, I would say I was.

"Q. And you participated in the profits? A. I was paid for services, yes, sir.

"Q. And how much did you draw during the time you were employed there from 1922 to 1924 when you went to work for Mr. Zweigart? A. Well, about the same arrangement continued as we had at Blackfoot.

"Q. You think you made about $120.00 a month from 1922, in November, when you signed this application for compensation, until January, 1924, when you went to work for Mr. Zweigart? A. I would say I was paid that, yes.

"Q. You were paid $120.00 a month about? Is that correct? I just want to be as definite as possible? A. Well that would be approximate, along with the average rate for board and room.

"Q. Answer my question as definitely as possible,—do you think you made about $120.00 a month during that period, in 1922 when you signed the application, until January, 1924? A. Yes, sir. I went to work for Mr. Zweigart at his butcher shop in 1924 at $40 a week, and continued in that butcher shop until March, 1926, drawing $40 a week during all of that time, that was my salary. I was supposed to be meat cutter, cutting the meat. I worked all over; the slaughter house, wholesale, and everything else. They didn't let me work in the market alone. I worked at all kinds of employment, and when I was working with my father I was working part of the time at the slaughter house, and doing whatever was required of me. Then after I left that I started in the painting business and have painted a number of houses here in Pocatello."

It thus appears from appellee's own testimony that he worked continuously for nearly seven years following his discharge, and that his earnings during that period amounted to approximately $10,000.

We conclude, therefore, that the evidence does not establish total and permanent disability at the time the policy lapsed. We think further comment on appellee's employ-

ment is unnecessary, other than to say that, in our opinion, the case is not one in which the plaintiff worked when he did not have the capacity to do so without serious peril to his life or health or without the risk of substantially aggravating his ailment.

The judgment is therefore reversed, and the cause remanded for a new trial.