## TRACY v. UNITED STATES.

No. 26.

Circuit Court of Appeals, Second Circuit.

Jan. 29, 1934.

John Buckley, U. S. Atty., and John A. Danaher, Asst. U. S. Atty., both of Hartford, Conn. (E. E. Odom and John M. George, Attys. for U. S. Veterans' Administration, both of Washington, D. C., of counsel), for the United States.

Denis T. O'Brien, Jr., and Robert M. Dowling, both of Meriden, Conn., for plaintiff-appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiff, Raymond C. Tracy, entered the military service of the United States August 3, 1918, and was honorably discharged February 15, 1919. While in the service he applied for and was granted $10,-000 war risk term insurance payable in monthly installments of $57.50 each in case he should become permanently and totally dis-

abled while the insurance was in force, beginning with the date of permanent and total disability and continuing so long as the disability might exist. Premiums were paid on the policy to include the month of February, 1919, but none thereafter. The insurance expired March 31, 1919.

The plaintiff alleged in his complaint that he became permanently and totally disabled on February 25, 1919, that he filed a claim for payment of insurance benefits, and that the claim was rejected prior to the institution of this action. The defendant in its answer denied that the plaintiff became permanently and totally disabled at any time while the insurance was in force.

The case was tried before a jury, and at the close of the evidence a motion was made for the direction of a verdict for the defendant, which was denied, whereupon the jury returned a verdict for the plaintiff. From the judgment entered on the verdict, the defendant has appealed.

Error is assigned because of the denial of the motion for the direction of a verdict and also because of certain alleged errors in the charge of the court. In our opinion these assignments of error are well founded, and the judgment entered on the verdict must accordingly be reversed.

 The first question presented is whether the plaintiff offered sufficient evidence to permit a jury to find that he was totally and permanently disabled prior to March 31, 1919, when the policy lapsed for nonpayment of premiums. The answer to this question involves a brief review of the facts.

The plaintiff entered the military service at Meriden, Conn. There was evidence that at this time he was in robust health. A few days after his enlistment in August, 1918, he was sent to Camp McClelland, Ala., where he stayed until the following February, and then went to Camp Upton where he was discharged. He testified that during the time he was at Camp McClelland he lived in a tent with six other men, having no supply of fuel for the stove and insufficient blankets for cold weather. The tent leaked during the rains and snows, his feet were wet practically all the time, and he had no change of shoes. His duty was that of a cannoneer, which compelled him to assist in caring for the guns that were being used and in cleaning the caisson every evening after firing ceased. He said he had to wash it in the brook at the rear of the camp, at times standing in the water up to his ankles. During his stay at camp he was sent to the hospital because of inflammation from poison ivy and pains in his legs and back due to an inoculation and remained there about ten days. He testified that these pains continued all through his service and after his discharge and continually got worse.

Upon leaving the army, he returned to his home in Meriden and after two weeks went to work as a clothing salesman in the employ of Harry L. Stockwell at wages of $22 per week. He had been employed in the same store at $17 per week before the war. He worked at the store from February, 1919, until January, 1927, and during the entire interval of nearly eight years received full wages from Mr. Stockwell without any deductions for loss of time. According to his own testimony, he was absent from work for a short time in May, 1919, for a week or two during that summer, for about six weeks in the autumn of 1919, when he had an attack of iritis, and for a time when he had some teeth extracted, but outside of these absences he only lost an average of about one day per week during the eight years.

Soon after the plaintiff's return to Meriden from Camp McClelland, his brother-in-law, Dr. Dinnan, who had a sanitarium, treated him for the pains in his hip and back. Dr. Dinnan diagnosed the case as lumbago, strapped up the patient, had his back massaged, and, during most of the week before Decoration Day, 1919, kept him at home and, on Decoration Day, in bed.

On July 20, 1919, the plaintiff consulted Dr. Murdock, who strapped his back and put him on cinchophen, a treatment used for arthritis. He also recommended that two of his teeth should be X-rayed, and advised him to go to bed, but the plaintiff replied that it was "economically impossible * * * to go to bed. He didn't have the money." Dr. Murdock testified that in July, 1919, he did not deem the plaintiff permanently disabled, but, in view of the entire history of the patient, he was of the opinion that in February, 1919, he was afflicted with rheumatoid arthritis and it was impossible for him to follow continuously any substantially gainful occupation and that conditions were then such as to make it reasonably certain that his disability would continue throughout his life.

In November, 1919, the plaintiff was examined by Dr. Sullivan, who attended him at intervals between that time and 1928. He then diagnosed his case as rheumatism, but it afterwards became arthritis. In answer to a question which defined total disability as any impairment of mind or body which renders it

impossible for a disabled person to follow continuously a substantially gainful occupation, and "permanent disability" as disability "founded upon conditions which render it reasonably certain that it will be continued throughout the life of the person suffering from it," Dr. Sullivan said that the plaintiff, in his opinion, was totally and permanently disabled in February or March, 1919. He stated that he reached this conclusion from the history of the case, and not from personal observation, that his diagnosis at the time he first saw the plaintiff was rheumatism, and that he believed arthritis did not begin until a later date. He said that on the basis of what he observed in 1919 he would not have been able to say that the plaintiff was permanently and totally disabled, but because of what happened subsequently he had formed the opinion that in November, 1919, the plaintiff could not follow his occupation with reasonable regularity, "but forced himself to work because he had to work, and had a family to support."

Mr. Stockwell, the plaintiff's employer, testified that he had a ruddy color when he returned from camp to work in his store, that he was paid $22 per week, plus commissions at the rate of 2 per cent. on his sales, and that he earned the money which he was paid and was kept under employment until December, 1926, "because it was good business to do so," for he "had a certain clientele that came in to him to purchase merchandise." Stockwell admitted, however, that the plaintiff complained of bodily pain and absented himself from work on numerous occasions for varying intervals between June, 1919, and December, 1926, when he ceased to work altogether. After December, 1926, he became permanently incapacitated. Subsequently he went for treatment to various hospitals, but obtained no relief, and finally died. In December, 1926, he injured his knee with a hammer while decorating his house for Christmas, and there was evidence that his rheumatic condition aggravated the trouble with his knee.

It appears from the foregoing that the plaintiff worked about five days out of six for some eight years after the lapse of his policy for nonpayment of premiums; that he was advised to take rest, but said that he could not do this because of his economic condition; that about January, 1927, he finally became so disabled from arthritis that he was unable to do any work whatever. While he was advised by two of his physicians to take a rest, they did not testify that

his work injured him or was dangerous to his health. United States v. Wilson (C. C. A.) 50 F.(2d) 1063.

The following definition of permanent and total disability was promulgated on March 9, 1918, pursuant to authority conferred by the War Risk Insurance Act and the World War Veterans' Act (Treasury Decision 20):

"Any impairment of mind or body which renders it impossible for the disabled person to follow continuously any substantially gainful occupation shall be deemed * * * to be total disability."

"'Total disability' shall be deemed to be 'permanent' whenever it is founded upon conditions which render it reasonably certain that it will continue throughout the life of the person suffering from it."

As the Supreme Court said in Lumbra v. United States, 54 S. Ct. 272, 275, 78 L. Ed. — decided January 8, 1934: "The phrase 'total permanent disability' is to be construed reasonably and having regard to the circumstances of each case." As in that case, the plaintiff here worked with a continuity and for a length of time that preclude a finding that he was under a total and permanent disability when his policy lapsed.

None of the physicians testified that in March, 1919, or at the times when they first examined the plaintiff, they could have pronounced his disability permanent, and they in fact maintained just the contrary. Yet some fourteen years after March, 1919, they attempted to make a diagnosis of total permanent disability as of that date, and did this though the plaintiff had thereafter worked for nearly eight years at wages higher than those he had received before enlistment, though his employer testified that he was worth the pay he got, and though he had suffered no deductions for absences during the entire period of his employment. After allowing for all absences, he was working more than 80 per cent. of the time and earning good wages for about eight years.

In spite of what appellant now claims was a condition of permanent disability in March, 1919, he applied to the Metropolitan Life Insurance Company for a $2,000 policy in November, 1919, and for a policy of $1,000 in April, 1925, and obtained each of the policies. It is quite evident that the claim that plaintiff was unable to work during the period from March, 1919, to April, 1925, is opposed by his own statements in applying for these policies for, if he had disclosed any such con-

dition as is now claimed to have existed, the policies would never have been issued.

The result of the testimony seems to be that plaintiff worked with substantial continuity and apparently without injury to his health for nearly eight years after his policy lapsed, and that the opinion of the physicians that he was totally and permanently disabled in March, 1919, is contradicted by his years of gainful occupation and is without substantial evidential basis. Lumbra v. United States, supra; Nicolay v. United States (C. C. A.) 51 F.(2d) 170; United States v. McCreary (C. C. A.) 61 F.(2d) 804; United States v. Jorgensen (C. C. A.) 66 F.(2d) 292. Moreover, years passed before this action was brought in 1932. This fact alone is a strong indication that the cause of action is without merit.

■■ We think the judgment must not only be reversed for lack of proof sufficient to sustain the verdict, but also because of prejudicial error in the charge to the jury. The court laid down an erroneous rule when (at folio 511) it charged that "the question is whether the condition in this plaintiff which produced his present incapacity was in existence prior to March 31, 1919—even though the manifestations of it were not apparent, or at least not fully apparent, until a later date." This instruction was not excepted to, but we comment on it in order to enunciate the correct rule.

Afterwards the court charged as follows (folios 522, 523) :

"If you should find, after weighing all of the evidence in the case, that the plaintiff was afflicted with a certain condition of disease prior to March 31, 1919, as a result of which disease he would not be able to hold a place in a substantially gainful occupation, in the ordinary competition of life, with reasonable or ordinary continuity and with reasonable certainty, throughout his life,—it would then follow that, for all purposes of this case, he was totally and permanently disabled before March 31, 1919, even though the manifestations of his disability did not fully appear until a later date."

To the last charge, the defendant excepted and assigned error.

We deem the first instruction erroneous because the question whether the condition which produced the "present incapacity" was in existence prior to March 31, 1919, was in no sense determinative of the issues. The condition might have been in existence in March, 1919, and might have been the cause

of ultimate disability although the plaintiff was not then totally and permanently disabled and still had the capacity to perform gainful labor for many succeeding years. The fact that, after working with substantial continuity for a long time, he finally succumbed to disease, did not show that he was permanently and totally disabled in March, 1919, even though arthritis finally resulted from conditions arising before that date, or had developed to a considerable extent at that time.

The second instruction likewise was erroneous, for it was error to charge, in substance, that the plaintiff could recover if the jury found that, as a result of his condition in March, 1919, he would not be able to pursue a gainful occupation with reasonable continuity "throughout his life." Such an instruction would imply that, though the plaintiff had continuously worked at a gainful occupation for eight years after the lapse of his policy, he could nevertheless recover because he had later finally succumbed to a disease which originated while the policy was in force. His disability must not only have been permanent, but total, before March 31, 1919, so that he could not thereafter work continuously without injury. Such was not the case here.

Judgment reversed.