## .GREENWALL v. UNITED STATES.

### No. 10102.

Circuit Court of Appeals, Eighth Circuit.

March 30, 1935.

C. E. Wright, of El Dorado, Ark. (Wade Kitchens, of Magnolia, Ark., and J. K. Mahony and H. S. Yocum, both of El Dorado, Ark., on the brief), for appellant.

John E. Harris, Asst. U. S. Atty., of Ft. Smith, Ark. (Will G. Beardslee, Director, Bureau of War Risk Litigation, of Washington, D. C., Wilbur C. Pickett, Sp. Asst. to Atty. Gen., Young M. Smith, Atty., Department of Justice, of Washington, D. C., and Clinton R. Barry, U. S. Atty., of Ft. Smith, Ark., on the brief), for the United States.

Before WOODROUGH and FARIS, Circuit Judges, and DONOHOE, District Judge.

DONOHOE, District Judge.

The question for determination is whether there was substantial evidence introduced in behalf of the plaintiff to support the verdict of the jury. The trial court took the view that the evidence was not sufficient, and instructed a verdict for the defendant. The case involves a war risk insurance contract. The claim of the plaintiff is that he became totally and permanently disabled within the term of the insurance, which term expired on the 30th day of May, 1919. His claim of disability is based on a bilateral fractured left ankle and severe hemorrhoids.

It appears without dispute that prior to the time the plaintiff entered the service, he fractured his ankle, and that, after entering the service, this ankle began to hurt while on a hike; that it then became so badly swollen that he was compelled to ride in an ambulance; and that for two or three weeks, according to his own language, he "couldn't do any walking to amount to anything. The ankle you might say has been entirely out ever since. Of course I can walk a little bit, but if I walk as much as ten or fifteen blocks on it, it would begin to weaken and hurt at nights." It is further disclosed by the record that "his ankle just pains and swells up, goes out so he can't walk on it, if he does much walking or standing; that it is the left ankle, and it has not improved, and seems a little bit weaker, if anything, than when he came out of the army." Moreover, it appears that he consulted with bone specialists, who were

unable to help him, and that he has given up hope of getting relief; that all he could do was to stay off of it as much as possible.

As to the hemorrhoids, it appears from the record that they developed while he was in the service; that they have not responded to treatment, and he has not been able to secure relief as a result of several operations; that in the month of May or June, 1927, as a result of one of the operations, he lost control of his bowels, but presently recovered; that he has not sought medical assistance since, due to the fear that that condition might return. He testified that any pressure on his ankle puts the ankle out of use, and any pressure that affects the hemorrhoids knocks him out; that he is able to stand on his right foot and favor his left ankle, but he finds it difficult to sit down because of the hemorrhoids, which have been bleeding since July, 1918. He testified that he was not able to perform any manual labor at the time of his discharge, or since.

On cross-examination, he testified that he weighed about 230 pounds when he went into the army, and about 210 pounds when he came out, and weighs 250 pounds now; that his injury to the ankle was an old injury occurring some twenty-five years ago. He admitted making an affidavit on January 1, 1931, in connection with his insurance claim, in which he correctly stated that he had been unable to work since discharged due to disability, and "unemployment has been continuous and time spent lounging around home, around the Exchange Club, and otherwise loafing." He further testified on cross-examination that he could not even mow the lawn, or do things at home; that he would walk up town, but would have to get some one to take him back; that he tried to get out in the oil fields and do a little brokerage business, and that he and his wife built some houses in 1921, and had a real estate business around El Dorado, Ark.; that he admitted making the statement in his disability allowance application in 1930, that he was unemployed, and that his regular trade or vocation was real estate broker; that he did that while loafing around; that he did have some income from rentals, varying from $50, $75 to $200 per month for a period of about ten years, mostly collected by his wife; that he was married in March, 1921; that he did not tell his wife at the time of his marriage that he had been totally and permanently dis-

abled for two years; that he was never a patient at a hospital while he was in the service; that after the injury, he came back to this side and then returned to England; that he does not know that he was then permanently and totally disabled, but thinks he was in a pretty bad shape; that since he took treatment from Dr. Vines, the date not appearing, although it would seem to be some time in 1919, he might have done a little of about everything in the way of sports that other men did, but did not play at the bowling alley, but might have tried it; that he would gamble; that he would bet on "everything I know of"; that he had waited from April 24, 1919, the time of his discharge from the army, until 1931, when he filed this suit, because he was trying to make a living for himself; that he never saw the policy or knew anything about it, but that he now knows that the insurance provided for recovery in case of total disability. On redirect examination, he testified that at the time of filing his claim, he was not confined to bed, and did not require constant nursing or attendance.

It does not appear from the record that the plaintiff was confined to his bed at any time due to his claimed disability, except possibly a few weeks, during the times of his operations for the hemorrhoids. That the plaintiff has a degree of disability may not be questioned; but is there any evidence that the disability is total and permanent within the meaning of that phrase in the insurance policy, as construed in numerous decisions by this court? There is no evidence that the defendant uses either a cane or a crutch. Then, too, many men have been so unfortunate as to lose one or both feet, and yet are in no sense totally disabled. His other complaint is quite common, but total disability from that source is very unusual. The only evidence showing total disability of the plaintiff from that source was perhaps for two weeks, when he lost control of his bowels, and was confined to bed, but that disability was only temporary.

The long delay in asserting his claim is not consistent with a sincere belief in the merits thereof. The explanation which he makes for this long delay in asserting his claim is not satisfying. Madison L. Miller, Jr., v. United States of America, 55 S. Ct. 440, 79 L. Ed. ——, opinion filed March 4, 1935. There is a vast difference between total disability and a refusal to devote one's energies and faculties to a gainful occupa-

tion. The ultimate result may be the same, but for the former, if permanent, recovery may be had on a war risk insurance policy, while for the latter there is no reward.

The order of the lower court directing a verdict was not erroneous.

Judgment affirmed.