**STEPHENSON v. UNITED STATES.**
**No. 10156.**

Circuit Court of Appeals, Eighth Circuit.
June 29, 1935.

R. J. Schroeder, of St. Louis, Mo., for appellant.

W. Clifton Stone, Atty., Department of Justice, of Washington, D. C. (Harry C. Blanton, U. S. Atty., of Sikeston, Mo., Herbert H. Freer, Asst. U. S. Atty., of St. Louis, Mo., Will G. Beardslee, Director, Bureau of War Risk Litigation, of Washington, D. C., Wilbur C. Pickett and Randolph C. Shaw, Sp. Assts. to Atty. Gen., on the brief), for the United States.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

WOODROUGH, Circuit Judge.

This is an appeal from a judgment in favor of the United States in an action upon a $10,000 policy of war risk insurance. The policy lapsed on May 1, 1919, unless the appellant was totally and permanently disabled on or before that date. At the conclusion of the plaintiff's evidence the jury was instructed to return a verdict for the defendant. The correctness of that ruling is the only question on appeal.

The evidence upon which the appellant relied to establish his claim of total and permanent disability during the life of the policy reveals substantially the following facts: The veteran was in good health at the time of his enlistment in the infantry in August, 1917. He was transferred to France early in May, 1918, and saw active service at the front. He was under heavy shell fire in the Vosges and St. Mihiel sectors during the summer of 1918. In July, 1918, he was treated for a cold and a continuing headache. In September he sustained a fall and suffered a fracture of the right shoulder and a side injury. After an attempt to continue duty he was hospitalized and received treatments for his headaches. Shortly after his return to active duty in November he was gassed, and his condition was such that he remained in the camp infirmary until early in December, 1918. There he received treatments for a sinus disability. He saw no further duty and was returned to the United States in a casual company and was discharged on March 17, 1919. He testified that his headaches were continuous and that he was receiving daily treatments at the time of his separation from the army. Upon discharge he certified that he had no reason to believe that he was suffering from any disability or impairment of health incurred in the service. A short time after his discharge the appellant attempted to re-engage in his prewar occupation in a box factory. Within a few days he was sent to Dr. Shaw for treatment, and in August, 1919, he was operated on for a hernia. He remained under Dr. Shaw's care for his headaches and nervous condition, and the doctor prescribed sedatives and tonics to build him up. After about two months and a half he returned to the box factory, where he was assigned lighter work. He was favored by the superintendent and did not work continuously, reporting to Dr. Shaw daily for treatments. In 1920 he entered the Veteran's Hospital for treatment and a submucus resection was performed.

The government then undertook to train him vocationally. He began a course in commercial illustration, which he abandoned because of nervousness. After special treatment for nervous disorders at a nerve diagnostic center at Waukesha, Wisconsin, he attempted courses in watchmaking and shoe factory work. In 1921 he underwent an operation for sinus trouble. In 1922 he returned to the hospital for treatment for a number of months and was operated upon again for sinus disability. He was unable to continue a course in agriculture and began training for hotel work. In 1923 and 1924 he was confined in a hospital almost continuously. "Continuous headaches and my sinus condition were the reasons for my hospitalization at that time." In 1928 he was employed for a few months by a dry goods company, and that was his last employment. The veteran estimated that since his discharge from the army he has been confined in a hospital for approximately ten years and has undergone more than twenty operations for the sinus condition.

Dr. Shaw, who first treated the veteran in the early summer of 1919, testified:

"Mr. Stephenson remained under my care on account of his continuous headaches and nervous condition and I prescribed nerve sedatives and tonics to build him up. His condition remained about the same while under my care. * * *

"In my opinion, Mr. Stephenson was not capable of carrying on continuously any substantially gainful occupation without being favored by his employer. It was my opinion that his condition would remain the rest of his life; we can't always tell, it is impossible for us to foresee the future; we are very much mistaken a lot of times, but it kind of looks like my opinion at that time was correct. I attributed the nervous condition, headaches, and sinus trouble from a history given me by Mr. Stephenson when I first interviewed him and I attribute his disabilities to his war service and having been hurt in France."

Dr. Barnes examined the appellant shortly before the trial. He found "indication of organic disturbance in a certain part of the spinal cord," "a very marked clonus of the lower extremities," and an "envolvement of the central nervous system." He did not believe the appellant would recover. He stated that in his opinion the appellant was disabled on May 1, 1919, "and still continues to be disabled; in other words, he has not been able to work, his disability has been total, and after having been in existence for fourteen years, I should say it was permanent then and it is still permanent."

In 1927 the veteran applied for reinstatement of his insurance in the amount of $5,000, and it was granted. In his application he stated that he was not then totally and permanently disabled. In January, 1929, the Administrator of Veterans' Affairs declared the appellant to be totally and permanently disabled, and entitled to receive the benefits under the converted policy.

█ The evidence and the inferences that may be justifiably drawn therefrom most favorable to the appellant fail to sustain the veteran's claim of total and permanent disability during the life of the policy. Much of the evidence relates to the condition of the appellant from the date of the lapse of his policy until the present time. Such evidence has significance only to the extent that it tends to show whether he was in fact totally and permanently disabled on or before May 1, 1919. U. S. v. Spaulding, 293 U. S. 498, 500, 55 S. Ct. 273, 276, 79 L. Ed. 617; Lumbra v. United States, 290 U. S. 551, 558, 54 S. Ct. 272, 78 L. Ed. 492; Cockrell v. United States (C. C. A. 8) 74 F.(2d) 151; Eggen v. United States (C. C. A. 8) 58 F.(2d) 616, 619; Nicolay v. United States (C. C. A. 10) 51 F.(2d) 170; United States v. Green (C. C. A. 8) 69 F.(2d) 921; United States v. Nickle (C. C. A. 8) 70 F.(2d) 873, 879; Blair v. United States (C. C. A. 8) 47 F.(2d) 109.

█ It frequently happens that a total and permanent disability shown to exist at the time of trial became such long after the contract lapsed. Quite often an incipient condition during the life of the policy may develop progressively into a condition that is totally and permanently disabling after lapse. That is not sufficient to establish liability. Grate v. United States (C. C. A. 8) 72 F.(2d) 1; United States v. Green, supra; Andrews v. U. S. (C. C. A. 8) 63 F.(2d) 184; United States v. Peters (C. C. A. 8) 62 F.(2d) 977; Tracy v. United States (C. C. A. 2) 68 F.(2d) 834, 837. Unless the evidence substantially reveals a condition of a totally disabling character before the lapse of the policy which it is reasonably certain will continue throughout life, the plaintiff has failed to bring himself within the terms and conditions of the policy. Grate v. U. S., supra; United States v. McCoy (C. C. A. 5) 73 F.(2d) 786. Subsequent history may establish that such a condition of total disability existing at the time of lapse justified a conclusion of its probable permanency. Eggen v. United States, supra.

In this case it appears that the appellant was suffering from sinus infection, accompanying headaches, general nervousness, rupture, and a general bad feeling. He was under the care of Dr. Shaw on account of his headaches and general nervousness and the doctor prescribed sedatives and tonics to build up his system. The evidence establishes the progressive development of these general ailments through a recital of numerous and long periods of hospitalization and frequent operations upon the sinus tract, but the record is devoid of credible evidence that such disabilities were totally and permanently disabling at the time of the lapse of the policy. If we assume that the veteran's condition at that time was one of total disability, the only evidence upon which to base a belief that such disability was reasonably certain to continue throughout life is the testimony of Dr. Shaw. He stated: "It was my opinion his condition would remain the rest of his life." The doctor was prescribing sedatives and tonics to build up Stephenson's system and he gives no description of any pathological condition existing at that time affording an understandable basis for prognosis of its permanently disabling character. Such a diseased condition as was known to exist at that date and the treatment prescribed reflect rather that the disability was of temporary character and that a building up of the vitality of the patient would afford a cure. The opinion of the expert that the veteran was totally and permanently disabled at that time finds no basis in the facts then in his possession and disclosed by him.

█ The testimony of Dr. Barnes, based upon an examination made a few days before the trial, does not tend to establish the total and permanent character of the veteran's disability some fourteen years earlier. It was error to receive his opinion, and the medical testimony in this case is subject to the criticism expressed by the Supreme Court in U. S. v. Spaulding, supra: "The medical opinions that respondent became totally and permanently disabled before his policy lapsed are without weight. * * * Moreover, that question is not to be resolved by opinion evidence. It was the ultimate issue

to be decided by the jury upon all the evidence in obedience to the judge's instructions as to the meaning of the crucial phrase and other questions of law. The experts' ought not to have been asked or allowed to state their conclusions on the whole case."

■ That the appellant did not consider that he was totally and permanently disabled is evidenced by his statement as to his physical condition at the time of his discharge, and again in 1927, when he made application for and secured reinstatement of his insurance. Lumbra v. United States, supra; United States v. Rodman (C. C. A. 4) 68 F.(2d) 351; United States v. Rentfrow (C. C. A. 10) 60 F.(2d) 488.

■ While it cannot be said as a matter of law that the taking of vocational training precludes recovery, it is evidence inconsistent with the claim that the veteran was totally and permanently disabled. United States v. Nickle (C. C. A. 8) 70 F.(2d) 873, 878; Blair v. United States (C. C. A. 8) 47 F.(2d) 109; United States v. Alger (C. C. A. 9) 68 F.(2d) 592. The repeated attempts to prepare the appellant for a vocation which his ability and physical condition would permit him to pursue indicate a conviction that he was not then totally and permanently disabled.

■ It is true that his work record following his discharge is not impressive. The testimony of lay witnesses reveals that his condition interfered seriously with continuous employment; that he could not follow his prewar occupation successfully; and that frequent hospitalization forced the abandonment of other pursuits for which he sought training through vocational education. Considered as a whole, the appellant's work record is not of itself sufficient to defeat the claim to benefits under the policy. U. S. v. Spaulding, supra; Lumbra v. United States, supra.

■ The appellant's failure to satisfactorily explain or justify the delay of at least ten years in laying claim to benefits under this policy is incompatible with a belief that he was totally and permanently disabled before its lapse. Miller v. United States, 294 U. S. 435, 55 S. Ct. 440, 79 L. Ed. 977; U. S. v. Spaulding, supra; Lumbra v. United States, supra; Greenwall v. United States (C. C. A. 8) 76 F.(2d) 713; United States v. Nickle, supra; United States v. Green, supra;

United States v. McCoy (C. C. A. 5) 73 F.(2d) 786; Tracy v. United States (C. C. A. 2) 68 F.(2d) 834, 837. His delay, when considered with his own statements and his acceptance as a risk for converted insurance in 1927, is strong evidence of a lack of merit in the claim.

■■ The history of the gradual progress of appellant's ailments to a point of total and permanent disability in 1929 is appealing, but careful consideration of all the evidence has convinced that the burden of establishing a condition of total and permanent disability on or before the lapse of the policy was not sustained and the verdict was properly directed. Cf. United States v. Spaulding, supra; Lumbra v. United States, supra; Grate v. United States, supra; Eggen v. United States, supra; United States v. Rodman, supra; United States v. Timmons (C. C. A. 5) 68 F.(2d) 654.

The judgment is affirmed.