**UNITED STATES v. FAIN.**

No. 11352.

Circuit Court of Appeals, Eighth Circuit.
April 26, 1939.

Thomas E. Walsh, Atty. for Department of Justice, of Washington, D. C. (Julius C. Martin, Director, Bureau of War Risk Litigation, of Washington, D. C., Wilbur C. Pickett and Fendall Marbury, Sp. Assts. to Atty. Gen., and Fred A. Isgrig, U. S. Atty., and G. W. Hendricks, Sp. Atty., both of Little Rock, Ark., Bureau of War Risk Litigation, on the brief), for appellant.

D. K. Hawthorne, of Little Rock, Ark. (B. N. Florence, of Hot Springs, Ark., on the brief), for appellee.

Before SANBORN, THOMAS, and VAN VALKENBURGH, Circuit Judges.

THOMAS, Circuit Judge.

This is an action at law to recover disability benefits under a policy of war risk insurance. The government appeals from a judgment for plaintiff, assigning as error the court's refusal to instruct the jury to return a verdict in its favor. The single question to be determined is whether the evidence is sufficient to support the jury's finding that the insured was totally and permanently disabled on the date of the lapse of the policy, June 30, 1922.

The testimony tends to show that the plaintiff had been a teacher for about eight years and that he appeared to be in normal health at the time of his enlistment in the army on July 18, 1918. He was sent to France in the same year. There is no claim that he received any injuries in action. In October, 1918, he became ill with influenza, was sent to a hospital in France and returned to the United States a few months later. He received his discharge from the army on February 12, 1919.

The plaintiff's sister testified that when he returned to his home in Rogersville, Tennessee, following his discharge he appeared to be in poor health. He had lost weight, his appetite was poor and he did not sleep well at night. She observed that he was not himself, that his mind was not good and that he appeared nervous. She stated that he had been sick ever since returning from the service; that he gave up teaching because of poor health; and that he has made his home with her since 1928 and has not been able to do any work since he stopped teaching in 1920.

Dr. Lyons, the physician under whose care plaintiff placed himself on his return from the army, testified by deposition. He stated that the plaintiff's condition was apparently normal at the time of his enlistment; that he found him very nervous and suffering from colitis on his return from the army; that he treated him several years for these troubles but did not remember any treatments after the plaintiff entered dental school in 1923; and that he had no record of the patient but from memory he recalled his diagnosis to have been chronic colitis and psychoneurosis.

The plaintiff, a negro of more than average educational attainments, was a witness in his own behalf. He testified that he returned to his former occupation of teaching after his discharge from the army but gave up teaching in 1920 because his health failed. Thereafter he spent approximately nine months in various government hospitals. At the end of that time he returned to his home at Rogersville, Tennessee, of his own accord and placed himself under the care of Dr. Lyons, a local physician. In 1921 he entered vocational training and was sent to a summer school in Michigan to take a pre-medical course but became ill and returned home. He did no work for the next two years. In the fall of 1923 he again accepted vocational training and entered Meharry Medical College at Nashville, Tennessee, to begin a four year course in dentistry. He testified that while in school he was frequently sick and that his progress was slow and hard. His testimony in this respect is corroborated by several former classmates. It is undisputed, however, that his general average for the four years was 89.29% and that the school required attendance at least 80% of the time as a pre-requisite to a degree.

Upon his graduation in 1927 plaintiff went to Memphis, Tennessee, and interned under the supervision of Dr. R. F. Sandford, a former classmate. He remained in his office several months until about the 1st of October, 1927. Thereafter he was associated with Dr. A. B. Carver, also a former classmate then practicing dentistry in Memphis. The plaintiff worked with him about four months assisting with the diagnosis and prophylactic work of the operations but stated that he did not work continuously as there were days when he was sick. Dr. Carver and the plaintiff divided their earnings. The plaintiff testified that he was not able to make his expenses in the practice of dentistry and was physically unable to carry on his work. He abandoned that profession early in the year 1928. Since that date he has been under the care of physicians at his sister's home in Hot Springs, Arkansas.

On cross examination the plaintiff testified that he did not think that he was totally and permanently disabled at the time that he began his practice in 1927 but that he reached that conclusion when he found that he was not able to practice dentistry and make a living. He admitted that on June 10, 1931, he had made an application for a civil service appointment. and that his answer in response to a question concerning nervous exhaustion was "slight".

The plaintiff also testified that he had drawn total disability compensation from the government from 1919 until it was discontinued in January, 1935.

Dr. Carver, the plaintiff's former associate, testified that the plaintiff was not in the best of health while in school, frequently missed classes and was being treated by the doctors at the clinic at that time. He stated that the plaintiff was unable to do the mechanical work of dentistry because of his nervousness and lack of patience with the patients and that he seemed to crack under the strain.

With the exception of the evidence contained in the deposition of Dr. Lyons the medical testimony is confined to a statement of the plaintiff's condition subsequent to the year 1927 as found by the doctors treating him at intervals since that date.

Dr. Torrence testified that he first met the plaintiff in 1927 and that he had treated him for extreme nervousness since that

time; that the plaintiff has not been able to perform any work for any length of time since 1928 and that when he attempts to concentrate he goes to pieces, gets nervous and highly excited and is unable to sleep. His diagnosis was that plaintiff had psychoneurosis. He stated that he knew of no cure for that condition and that the plaintiff had grown gradually worse for eleven years.

Dr. Voorhees testified that he had known the plaintiff for some years but that he did not treat him as a physician until 1929. His first diagnosis was neurasthenia, a general nervous condition curable or arrestable in its incipient stage. After a thorough examination he gave the plaintiff a diagnosis of psychoneurosis or neurasthenia. He stated that psychoneurosis is neurasthenia growing into a worse stage and that it is a progressive condition affecting the nervous system and the mind. He testified that he did not believe the plaintiff would ever recover and that in his present condition he is unable continuously to apply himself to any labor or profession. While stating that he was unable to say how far in the past plaintiff had been so affected as to be unable to work he expressed the opinion that from plaintiff's history his trouble had its beginning in 1920 or 1921.

■ In considering the plaintiff's evidence we must assume as established all the facts tending to support his claim, and all reasonable inferences fairly deducible from those facts must be drawn in his favor. Lumbra v. United States, 290 U.S. 551, 54 S.Ct. 272, 78 L.Ed. 492; Noble v. United States, 8 Cir., 98 F.2d 441; United States v. Nelson, 8 Cir., 102 F.2d 515. The verdict of the jury, however, must be shown to rest on substantial evidence and not on mere speculation or conjecture. Pennsylvania Railroad Co. v. Chamberlain, 288 U.S. 333, 343, 53 S.Ct. 391, 77 L. Ed. 819; United States v. Elmore, 5 Cir., 68 F.2d 551, 554. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. v. National Labor Board, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. ——.

So tested, the evidence upon which it is sought to justify the jury's finding that plaintiff was totally and permanently disabled on June 30, 1922, appears exceedingly vague and inconclusive and to some ex-

tent is directly controverted by other evidence tending to establish exactly the opposite conclusion. Looking at the evidence as a whole it is impossible to draw any clear picture of the plaintiff's condition either at the present time or prior to June 30, 1922. Except for the testimony of the doctors who treated him in the years subsequent to 1927 there is practically no evidence to indicate that the plaintiff has developed a condition of total and permanent disability at any time.

The medical testimony regarding the plaintiff's condition is obviously very meagre. It indicates that the plaintiff is suffering from an incurable nervous condition which was diagnosed as psychoneurosis soon after his return from the army; that since the year 1927 his condition has been growing gradually worse; and that he becomes highly nervous whenever he makes any attempt at mental concentration. In the opinion of the doctors treating him he has been unable to do any work since 1928 and in his present condition is unable continuously to apply himself to any labor or profession. Other than these facts the jury were left to speculate on the exact degree of his disability and on the basis for the opinion that he is or has been unable to work continuously. While his sister expressed the opinion that the plaintiff was not mentally sound on his return from the army and the same opinion was repeated by an acquaintance who knew him in 1928, no suggestion of this fact appears in the medical testimony and it does not seem to be accurate in view of his college record. His testimony at the trial was entirely lucid. The fact that his nerves will not stand the strain incident to the mental concentration required of a dentist or teacher in no wise proves that he is unable to perform tasks of a physical nature not requiring close mental application. See Miller v. United States, 294 U. S. 435, 441, 55 S.Ct. 440, 79 L.Ed. 977; Lumbra v. United States, 290 U.S. 551, 559, 54 S.Ct. 272, 78 L.Ed. 492; Proechel v. United States, 8 Cir., 59 F.2d 648.

■ It is true the evidence tends to show that the plaintiff was not in sound health on his return from the army. Dr. Lyons' diagnosis and the records of his physical examinations by the Veteran's Bureau over a period of several years indicate that he was suffering from psychoneurosis or neurasthenia and several other ailments. There is no evidence that the latter con-

tinued or contributed to the disability now claimed. The fact that plaintiff may have been at that time suffering from a nervous disorder affecting a partial permanent disability will not afford recovery even were it clearly established that it had developed into a total and permanent disability subsequent to the lapse of the policy. Hoskins v. United States, 5 Cir., 100 F.2d 343; Stephenson v. United States, 8 Cir., 78 F. 2d 355.

Opposed to the conclusion. that the plaintiff was suffering from a total and permanent disability in June, 1922, is his own evidence of his activities in the years following his return from the army. In 1919 and 1920 he had resumed his occupation as a teacher. He testified that he stopped because his health failed but he does not say whether his illness was due to nervousness or whether it was due to other diseases for which he was being treated at that time and of which he does not now complain.

 In the years from 1923 to 1927 he was engaged in the study of dentistry. In Burbage v. United States, 5 Cir., 80 F.2d 683, 684, the court stated: "The insurmountable obstacle to appellant's recovery is his two years' work studying law * * *." While the evidence of the plaintiff's activities during his years in school is not detailed as in the cited case it is undisputed that he completed his training with some degree of distinction. Necessarily this required many hours of application and constitutes evidence inconsistent with his claim that he was totally and permanently disabled. Stephenson v. United States, 8 Cir., 78 F.2d 355; O'-Quinn v. United States, 5 Cir., 70 F.2d 599; Burbage v. United States, supra; United States v. Nickle, 8 Cir., 70 F.2d 873; United States v. Nelson, 8 Cir., 102 F.2d 515.

The plaintiff frankly admits that he did not consider himself totally and permanently disabled until some six years after the lapse of his policy. It might also be inferred that he had not definitely reached that conclusion in 1931 at the time he made application for a civil service appointment. This action was not brought until November 11, 1932, or more than ten years after the date of lapse. These circumstances all militate against his contention of total permanent disability on June 30, 1922. Miller v. United States, 294 U.S. 435, 441, 55 S.Ct. 440, 79 L.Ed. 977; Lum-

bra v. United States, 290 U.S. 551, 560, 54 S.Ct. 272, 78 L.Ed. 492; United States v. Fields, 8 Cir., 102 F.2d 535; Stephenson v. United States, 8 Cir., 78 F.2d 355.

The foregoing compels the conclusion that the evidence was insufficient to support the finding of the jury that the plaintiff was totally and permanently disabled at the time his contract of insurance lapsed. The government's motion for a directed verdict should have been sustained.

The judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.