# MILLER v. UNITED STATES.

No. 342. Argued February 5, 6, 1935.—Decided March 4, 1935.

*Mr. James A. Lowrey, Jr.,* with whom *Mr. Wallace Miller* was on the brief, for petitioner.

*Mr. Will G. Beardslee,* with whom *Solicitor General Biggs* and *Messrs. Wilbur C. Pickett* and *Randolph C. Shaw* were on the brief, for the United States.

*Messrs. James T. Brady* and *Y. D. Mathes* filed a brief on behalf of the Veterans' Administration.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

Petitioner enlisted in the United States Army June 7, 1917, and was honorably discharged April 3, 1919. On January 22, 1918, there was issued to him a war risk insurance policy, by the terms of which he was entitled to receive $57.50 per month in the event of his sustaining injuries causing total and permanent disability. No premiums were paid after the date of his discharge, and the policy then lapsed. Claim was made for insurance on June 5, 1931, twelve years later. The claim was disallowed by the Administrator of Veterans' Affairs on April 1, 1932. Thereupon, this action to recover judgment upon the policy was brought.

The facts upon which the action is based follow: On October 26, 1918, while in active service in France, petitioner sustained injuries in a railway accident resulting in the amputation of his right arm. He alleges that, for all practical purposes, the sight of his left eye was destroyed at the same time. Although the evidence shows that the

defective condition of the eye was congenital, no point is made in respect of that fact; and for present purposes we put it aside. At the conclusion of the evidence before the trial court, the judge sustained a motion of the government for a directed verdict, on the ground that the injuries did not, as a matter of law, result in total and permanent disability. Verdict and judgment followed accordingly. The Court of Appeals affirmed the judgment, 71 F. (2d) 361, and we brought the case here on certiorari.

Article III of the Act of 1917 (c. 105, 40 Stat. 398, 405) relates to compensation for death or disability. The provisions in respect of insurance are dealt with separately (p. 409) in Article IV of the act; and this separation of the two subjects has been maintained in subsequent acts. The provision in respect of insurance (p. 409) is that upon application to the Bureau, the United States " shall grant insurance against the death or total permanent disability " of enlisted men and other classes of persons named in the act. The provision of the act (§ 302) with respect to compensation was enlarged by the amending act of December 24, 1919, c. 16, § 11(3), 41 Stat. 371, 373, so as to bring conclusively within the term " total permanent disability " the loss of one hand and the sight of one eye; and this has since remained the law. No such amendment was carried into the insurance article of the act; and, in that respect, the statute has never been changed.

Section 13 of the 1917 act, as amended, c. 77, 40 Stat. 555, confers upon the Director of the Bureau authority to make such rules and regulations, not inconsistent with the provisions of the act, as may be necessary or appropriate to carry out its purposes. Under that provision, a regulation was issued March 9, 1918, declaring— "Any impairment of mind or body which renders it impossible for the disabled person to follow continuously any substantially gainful occupation shall be deemed, in Articles III and IV, to be total disability." It was while this regulation was in

effect that § 302 of the act was amended, as stated above, to provide in respect of compensation that the loss of one hand and the sight of one eye should be deemed total permanent disability. In May, 1930, Regulation 3140 was promulgated. That regulation, among other things, declares that the loss of one hand and one eye " shall be deemed to be total permanent disability under yearly renewable term insurance."

Succinctly stated, petitioner contends (1) that § 302, as amended, applies to war risk insurance as well as to compensation allowances; (2) that regulation 3140 is within the power of the Administrator of Veterans' Affairs (who succeeded the Director of the Bureau), and controls the present case; and (3) that, the foregoing aside, the evidence was sufficient to justify a verdict in his favor.

*First.* The argument as to the first point, in brief, is this: The amendment to the compensation article of the act, adopted in 1919, must be construed and applied in the light of the regulation of March 9, 1918, of which regulation congressional knowledge and approval are to be assumed. By that regulation, the bureau adopted a uniform rule applicable alike to compensation and insurance; and, the contention seems to be, since Congress did not by express words limit the operation of the amendment of 1919 to compensation, it is fair to conclude that it was intended that the amendment, conforming to the principle of the regulation, should apply to both compensation and insurance. We see no warrant for that conclusion. When the regulation was adopted, neither Article III nor Article IV contained any specific provision in respect of the disabling effect of the loss of one hand and the sight of one eye. By the amendment, not only was the formal expression of the new rule confined to Article III, but the opening words of the amendment quite clearly indicate a legislative intention to confine its application to that article. These words are—" If and while the disability is rated as

total and permanent, the *rate of compensation* [italics added] shall be $100 per month," etc. It is hard to see why the intention of Congress to limit the operation of the amendment to compensation allowances is not thus definitely and clearly manifested.

*Second.* Regulation 3140 was not adopted until eleven years after the insurance policy had lapsed and petitioner's cause of action thereon had fully matured. Undoubtedly, the regulation in terms declares that permanent loss of the use of one hand and one eye shall be deemed to be total permanent disability under an insurance policy such as that issued to petitioner. But the regulation is both inapplicable and invalid.

It is inapplicable because it contains nothing to suggest that it was to be given a retrospective effect so as to bring within its purview a policy which had long since lapsed and which had relation only to an alleged cause of action long since matured. The law is well settled that generally a statute cannot be construed to operate retrospectively unless the legislative intention to that effect unequivocally appears. *Twenty per Cent. Cases,* 20 Wall. 179, 187; *Chew Heong* v. *United States,* 112 U. S. 536, 559; *Fullerton-Krueger Co.* v. *Northern Pacific Ry. Co.,* 266 U. S. 435, 437. The principle is strictly applicable to statutes which have the effect of creating an obligation. An administrative regulation is subject to the rule equally with a statute; and accordingly, the regulation here involved must be taken to operate prospectively only.

It is invalid because not within the authority conferred by the statute upon the Director (or his successor, the Administrator) to make regulations to carry out the purposes of the act. It is not, in the sense of the statute, a regulation at all, but legislation. The effect of the statute in force at the time of the adoption of the so-called regulation is that *in respect of compensation allowances,* loss of a hand and an eye shall be deemed total permanent dis-

ability as a matter of law. There being no such provision with respect to cases of insurance, the question whether a loss of that character or any other specific disability constitutes total permanent disability is left to be determined as matter of fact. The vice of the regulation, therefore, is that it assumes to convert what in the view of the statute is a question of fact requiring proof into a conclusive presumption which dispenses with proof and precludes dispute. This is beyond administrative power. The only authority conferred, or which could be conferred, by the statute is to make regulations to carry out the purposes of the act—not to amend it. *United States* v. *200 Barrels of Whiskey*, 95 U. S. 571, 576; *Morrill* v. *Jones*, 106 U. S. 466, 467; *United States* v. *Grimaud*, 220 U. S. 506, 517; *Campbell* v. *Galeno Chemical Co.*, 281 U. S. 599, 610.

*Third.* The burden was on petitioner not only to show the character and extent of his injury, but also to show that the result of the injury was to disable him permanently from following any substantially gainful occupation. *Proechel* v. *United States*, 59 F. (2d) 648, 652; *United States* v. *McCreary*, 61 F. (2d) 804, 808. Petitioner lost his right arm; and the proof shows that he had been right-handed. Before the injury he was a practical engineer operating a surveying instrument; but with the loss of his right arm he could not operate such an instrument. In 1919 he obtained employment in a packing house, but found himself unable to retain the employment because it necessitated lifting heavy quarters of meat which he could not do with one arm. He was also unable to take orders for the house because he could not hold the receiver of the telephone and write orders at the same time. After three weeks, he was obliged to give up this employment. From time to time, he obtained other work which involved the use of both hands and which he was obliged to abandon. On the other hand, it appears that he worked for twenty-two months in the business of

selling stocks on commission, and for a few months in that of selling goods, from neither of which he received much in the way of income—not because his injury incapacitated him for the work, but because he lacked ability as a salesman. It does not appear that he made any earnest endeavor to fit himself for this work, or any effort to engage in other work which ordinarily a one-armed man with one defective eye could do. See *United States* v. *Thomas,* 53 F. (2d) 192, 195. He testified that he had received an average of $90 a month from the government as compensation since his discharge. He also received $2,500 from the sale of a farm in which he had an interest. He was, therefore, not without resources with which to obtain proper training. It does not appear that he undertook to do so. It is by no means infrequent for one-armed men to make a good living and support others by performing work adapted to their condition. It is clear from the evidence that the failure of petitioner in some of the things he undertook to do was not because of his crippled condition, but because of his general inaptitude for the work. The mere fact that he was unable to follow the occupation of surveyor or to do work of the kind he had been accustomed to perform before his injury does not establish the permanent and total character of his disability. *Lumbra* v. *United States,* 290 U. S. 551, 559. His long delay before bringing suit is wholly incompatible with a belief on his part that he was totally and permanently disabled during the period while his policy was in force. *Id.,* p. 560; *United States* v. *Hairston,* 55 F. (2d) 825, 827. If petitioner thought himself totally and permanently disabled, it is difficult to understand why he waited twelve years before attempting to assert his rights. The only explanation he makes for his delay is that he thought a man had to die to get the insurance. How he discovered his error after the extraordinary lapse of time indicated above we are not told. He was intelligent, had

completed the third grade at high school, and a year at military school. It does not seem possible that he had never read the policy, which so plainly insures against total permanent disability. In the light of all the circumstances, his explanation is not credible.

The court below, after reviewing the evidence and the decisions of this and other courts, reached the conclusion that petitioner had not sustained the burden of proof and that the trial court was justified in directing a verdict for the government. That conclusion is well supported by our recent decision in the *Lumbra* case, *supra,* and by other decisions. See, e. g., *Proechel* v. *United States, supra; United States* v. *Thomas, supra; Hanagan* v. *United States,* 57 F. (2d) 860, 861.

*Judgment affirmed.*