## UNITED STATES v. ATKINSON.

No. 7517.

Circuit Court of Appeals, Fifth Circuit.

March 27, 1935.

Rehearing Denied April 20, 1935.

David A. Turner, Atty., Department of Justice, and W. R. Smith, Jr., U. S. Atty., both of San Antonio, Tex., and Walter S. Howe, Asst. U. S. Atty., of El Paso, Tex.

R. A. D. Morton, of El Paso, Tex., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

On April 28, 1934, plaintiff, who had kept all his premiums paid, brought this suit on a policy of government life insurance No. K 634242, into which on July 1, 1927, he had converted his war risk insurance policy, and which had, on July 1, 1932, been renewed for five years. He alleged that on January 1, 1928, he became totally and permanently disabled within the meaning both of the general terms of the policy, and of the particular definition of paragraph 11, § (2), thereof: "Without prejudice to any other cause of disability * * * —the loss of hearing of both ears * * * shall be deemed to be total, permanent disability." A trial to a jury resulted in a verdict and judgment for plaintiff. This appeal questions the jurisdiction of the court for want of a disagreement, and the correctness of the judgment for errors occurring on the trial.

We need not consider the jurisdictional point, for it passed out of the case with the enactment on January 28, 1935, of Public Resolution No. 1, 74th Congress (38 USCA § 445c). We proceed to a discussion of the claimed errors: (1) That the court erred in denying defendant's request for a peremptory instruction; (2) that there was er-

ror in withdrawing from the jury the issue of fraud tendered in connection with the plaintiff's application for reinstatement of his war risk insurance on June 10, 1921; (3) error in not instructing the jury that in determining whether plaintiff had, under paragraph 11, § (a), of his policy, suffered the loss of hearing of both ears, they should consider his possible use of, and the effect of his use of, artificial aids to hearing.

The evidence, outside of the documents offered and the medical testimony, consisted of plaintiff's testimony and that of three persons for or with whom he had worked before 1928. Without undertaking to detail it, it is sufficient to say that it was ample to support a verdict that plaintiff was without the aid of ear phones or other similar mechanical devices, to all practical intents and purposes, totally deaf; that the use of such phones greatly helped his hearing, and that but for this impairment of hearing which, in 1928 got so bad he could not hold a job, he was a capable and competent draftsman. Plaintiff testified positively, and his testimony was not disputed, that he had been for a long time getting deafer, and that since his practically total deafness had come on him he had not been able to get any employment. The employer for whom he last worked stated that though he was otherwise competent, his deafness was such that he had to let him go. The physicians testified that at least since 1932, the date the jury found his total disability occurred, speaking of the use of his ears unaided by devices, he had for all practical purposes, completely lost his hearing. They testified, however, that the use of artificial aids greatly increased his power to hear. There was conflict between them as to the extent to which he was practically aided by them in getting and holding a job. Plaintiff testified positively, and there was no attempt at contradiction, that to use his ear phone effectively for all of a working day would in using up batteries at 75 cents each entail a cost of from $10 to $12 a day, a practically prohibitive cost. That because of this cost he was only able to use the phone intermittently by turning it on when something came up that he particularly wished to hear. With the evidence in that shape, and the government insisting that paragraph 11, § (a), was invalid, and that, if valid, it must be construed to mean that one cannot be said to have lost his hearing in both ears if by the use of artificial aids he could hear, the court submitted to the jury whether plaintiff was totally and permanently disabled either under paragraph 11, § (a), from having suffered the loss of hearing of both ears, or under the general provisions of the policy, from being in a condition which permanently disabled him from making his living by work. He told the jury that if they believed that plaintiff had totally lost his hearing, or if they did not believe that, but believed that his condition totally and permanently incapacitated him from making his living by work, they should find for plaintiff. If they believed that neither had occurred, for defendant.

In connection with the charge on total and permanent disability under the general clause in the policy, the jury were told that they could consider, in determining whether plaintiff was totally and permanently disabled, the use of, and the effect of the use of, artificial aids to hearing. In connection with the issue whether plaintiff had suffered loss of hearing of both ears, the jury were not so instructed, but, on the contrary, defendant's requested charge that they should consider such aids was refused.

■ The first point made by appellant, that the definition of total permanent disability of paragraph 11, § (a), was inserted in the policy without authority must be overruled. The statute authorizing the director to issue converted insurance policies, U. S. Code, tit. 38, § 512, 38 USCA § 512, provides: "Not later than July 2, 1926, all term insurance * * * shall be converted * * * into such form or forms of insurance as may be prescribed by regulations and as the insured may request. Regulations shall provide for the right to convert into ordinary life * * * and into other usual forms of insurance." "Provisions for maturity at certain ages * * * and such other provisions for the protection and advantage of and for alternative benefits to the insured and the beneficiaries as may be found to be reasonable and practicable, may be provided for in the contract of insurance, or from time to time by regulations."

■ The policy comes clearly under this authorization. Our case of Miller v. United States, 71 F.(2d) 361, affirmed 55 S. Ct. 440, 79 L. Ed. ——, is without application here. It had to do with a regulation by the director, made many years after the war risk insurance policy had lapsed, purporting to import into the policy retroactively provisions not in accordance with the statute authorizing the making of the regulations. We find the assailed provision valid. We

think, too, the District Judge was right in construing it to relate to the loss of natural hearing. But if, viewed abstractly, this was not a correct construction of the clause, as applied to the evidence it was, for by the undisputed proof as to the prohibitive cost to plaintiff of using an ear phone throughout a working day, it is clear that for the purpose of the policy of insurance, plaintiff, whose wages at best were never as much as the cost of the use of the phone, was totally deprived of his hearing. While, therefore, as an aid to comfort and as a luxury, the use of ear phones might be available. to him, as an aid to making a living they would be worse than useless, costing him more for their use than he could possibly earn in a working day. We do not think then that there was error in refusing the charge on mechanical aids requested by defendant, or any in refusing the instructed verdict defendant asked. Whether the proof was sufficient to make out a case for the jury also under the general definition of total and permanent disability in the policy, we need not determine, for defendant's motion to instruct was general and we have seen that that request was properly refused. There was no special request to instruct the issue of general total and permanent disability out of the case, separate and apart from the general motion to instruct on the whole case. There was no error of which defendant may complain in submitting that issue to the jury. Nor was it error to withdraw from the jury the tendered issue of fraud in 1921. It is perfectly clear that when plaintiff made his application then for reinstatement, neither he nor anybody else thought or had right to think that his health was other than good. True, his hearing was impaired, but that was disclosed by the doctor's statement as part of the application. There was no concealment whatever, no fraud. Plaintiff was asked if he had been treated for any disease of the ear. It would be natural and proper for one who knew that the physician to whom he had gone in connection with his ear was making out his application and was disclosing that his hearing was defective, to consider that he had fully answered. An ordinary layman would not suppose that ordinary hardness of hearing was a disease. He was not asked if there was any defect in his hearing. His answers could not in reason be taken to be fraud.

We find no error in the judgment. It is affirmed.