### UNITED STATES v. TUCKER.
### No. 3888.

Circuit Court of Appeals, Fourth Circuit.

June 21, 1935.

Charles M. Love, Jr., Asst. U. S. Atty., of Charleston, W. Va., and Young M. Smith, Atty., Department of Justice, of Washington, D. C. (George I. Neal, U. S. Atty., of Huntington, W. Va., Will G. Beardslee, Director, Bureau of War Risk Litigation, and Armistead L. Boothe, Atty., Department of Justice, both of Washington, D. C., on the brief), for appellant.

J. D. Jones, of Glenville, W. Va., and R. E. O'Connor, of Charleston, W. Va., for appellee.

Before SOPER, Circuit Judge, and WATKINS and CHESNUT, District Judges.

PER CURIAM.

This suit is based on a policy of war risk insurance issued to James O. Tucker while in the military service of the United States. The policy lapsed on October 31, 1919, unless on or before that date, the insured was permanently and totally disabled. It was admitted that at the time of the trial, the insured was permanently and totally disabled by reason of insanity. His trouble was diagnosed as paranoia in 1928 when he was first treated for the disease at a government hospital for a period of forty-six days. He returned to the hospital in 1930, and at the time of trial was still undergoing treatment.

At the conclusion of the evidence offered by the plaintiff at the trial, the government moved for a directed verdict in its favor, on the ground that there was no substantial evidence tending to show permanent and total disability on or before October 31, 1919, but this motion was overruled and the jury found a verdict for the plaintiff. We are of the opinion, after an examination of the evidence, that the motion should have been granted. There is evidence that for periods of substantial length during the interval from the soldier's discharge from the army on September 3, 1919, to June 30, 1928, when he was admitted to a hospital for mental treatment, the insured was engaged in various gainful occupations in which he was able to make substantial sums of money. It is true that there is some evidence of nervousness during this period, but it cannot be said that he was permanently and totally disabled. Beginning in December, 1919, he worked ten hours a day in a saw mill for several months and was paid $4.25 a day. He was married in 1920. He was engaged in vocational training as a watch repairer for two years beginning in August, 1921. He attended to this occupation very regularly, and impressed his trainer as a splendid workman. At the end of this period, the trainer recommended him for employment to his son-in-law, by whom the insured was employed for a few months. The insured then set up a store of his own which he conducted for about

six months, but it was not a business success.

In the year 1923, the insured applied for reinstatement of his policy, and was examined by a physician who estimated that he was a fair risk and recommended the acceptance of the risk.

Subsequently, the insured learned the business of shoe repairing, being his own teacher, and he followed this occupation for two years before he was first taken to the hospital for mental treatment. Evidence offered on behalf of the plaintiff tends to show that during this period he made as much as $200 per month. After his return from the hospital in 1928, he resumed the same occupation until his breakdown in 1930.

It is obvious from this recital of the testimony that there was no substantial evidence tending to show permanent and total disability in 1919, and that a verdict for the government should have been directed. See Lumbra v. United States, 290 U. S. 551, 54 S. Ct. 272, 78 L. Ed. 492; Miller v. United States, 55 S. Ct. 440, 79 L. Ed. 977; Poole v. U. S. (C. C. A.) 65 F.(2d) 795; Werth v. U. S. (C. C. A.) 75 F.(2d) 192.

Reversed.