## FOOTE v. UNITED STATES.
### No. 7579.

Circuit Court of Appeals, Fifth Circuit.
Nov. 15, 1935.

E. Kontz Bennett, of Waycross, Ga., and S. F. Memory, of Blackshear, Ga., for appellant.

Thomas E. Walsh, W. Clifton Stone, and Helen L. Bowman, Attys., Department of Justice, all of Washington, D. C., Dunbar Harrison, Asst. U. S. Atty., of Savannah, Ga., and Lawton H. Ware, Atty., Veterans Administration Facility, of Atlanta, Ga., for the United States.

Before SIBLEY and WALKER, Circuit Judges, and HOLMES, District Judge.

WALKER, Circuit Judge.

On October 15, 1932, the appellant, the temporary administratrix of the estate of Murray K. Foote, deceased, brought this action on two war risk policies or certifi-

cates issued to the deceased, who died on August 14, 1930, never having asserted a claim under either of those policies, which lapsed on July 1, 1919. Allegations of the petition to the effect that the deceased became totally and permanently disabled while said policies were in force were put in issue. Verdict and judgment in favor of the defendant, appellee here, followed the granting by the court of a motion, made upon the conclusion of the evidence offered by the plaintiff, that a verdict in favor of the defendant be directed.

Three lay witnesses, the widow of the deceased, a sister, and a former employer, and two doctors testified in behalf of the plaintiff. The widow of the deceased testified that she first met him in 1924 and became his wife in October of that year, at which time deceased was nervous, had vomiting spells, coughing spells each morning before breakfast, and spit blood; that in 1928 deceased told witness that he had let his insurance lapse. Deceased's sister testified that she met the deceased immediately after his discharge from the army in May, 1919, that from that time until the spring of 1922 the deceased lived at the home of the witness, during which period he was very nervous, lost weight, had a hacking cough from the first time she saw him, and began to spit blood within two or three weeks; that almost immediately after he returned deceased began work with Althous as a plumber's helper, and he worked with Althous continuously until the fall of 1920; that he worked for a while at a bakery shop, doing odd jobs around the place; that he supported himself from his work and helped to support his mother; that in the winter of 1921 deceased had a severe attack of pneumonia; the doctor who attended deceased at that time was the first doctor that witness knew of attending the deceased after he returned from the army; that after that attack of pneumonia deceased's condition gradually became worse; subsequently deceased went to a government hospital, which he left without leave on three different occasions that witness could recall.

Carl Althous testified that the deceased worked for witness after his discharge from the army until September, 1920, doing the same kind of plumbing work he had done before he went into the army, but received higher wages during the period of employment after the war. On direct examination, witness stated that deceased worked about two-thirds of the time, and, on cross-examination, stated that witness could not say whether the one-third time deceased was off work was because there was no work for him to do, but that deceased lost some time from work on account of drinking, and that deceased had to work only when there was work to do. During the time deceased was employed by witness after the war, deceased seemed to be nervous, had a hacking cough and a twitching of his eyes; witness never heard deceased complain of any sickness or disability except nervousness that did not interfere with his working ability.

One of the doctors first examined deceased five or six years before the latter's death. Witness stated that at the time of that examination deceased was suffering from pulmonary tuberculosis, witness did not know in what stage, but both lungs were involved at that time. The other doctor did not examine the deceased until a short time prior to the latter's death. A certified copy of deceased's service record, introduced by appellant, included a certificate of the examining surgeon, dated May 20, 1919, stating that deceased was given a careful physical examination and found to be physically and mentally sound with the exceptions of a minor gunshot wound, right side, and relaxed right groin, and that in view of his occupation he was 1 per cent. disabled.

No medical testimony introduced had any tendency to prove that while the policies sued on were in force, deceased was totally and permanently disabled by reason of tuberculosis or from any other cause. If it properly could be said that any lay testimony introduced tended to prove that deceased suffered from tuberculosis while the policies were in force, nothing in that testimony supported a finding that the disease had progressed beyond the incipient stage prior to the lapse of the policies, or that deceased was either totally or permanently disabled while the policies were in force. The evidence was such that a finding that the deceased was totally and permanently disabled while the policies were in force, rather than that after the policies lapsed he became so disabled in consequence of his lack of ordinary prudence in failing to take treatment available to him, evidenced by his repeated absences from a government hospital with-

out leave, must have been based, not on evidence furnishing any support for such a finding, but on unwarranted surmise or conjecture. Eggen v. United States (C. C.A.) 58 F.(2d) 616; Wise v. United States (C.C.A.) 63 F.(2d) 307; Falbo v. United States (C.C.A.) 64 F.(2d) 948; Id., 291 U.S. 646, 54 S.Ct. 456, 78 L.Ed. 1042; United States v. Sandifer (C.C.A.) 76 F.(2d) 551. The facts that during a period of considerably more than a year immediately following his discharge from the army deceased supported himself by work and contributed to the support of his mother, that during the period of more than eleven years between the date of his discharge from the army and the date of his death deceased made no claim under the policies sued on, and that in 1928 he told his wife that he had let his insurance lapse, are incompatible with a belief on his part that he was totally and permanently disabled during the period while his policies were in force. The evidence as a whole was such as called for the conclusions that appellant did not sustain the burden of proving that deceased became totally and permanently disabled while the policies sued on were in force, and that the court was justified in making the above-mentioned ruling. Miller v. United States, 294 U.S. 435, 55 S.Ct. 440, 79 L. Ed. 977. The judgment is affirmed.