### UNITED STATES v. HALL.
### No. 3045.

Circuit Court of Appeals, First Circuit.
Nov. 20, 1936.

For prior opinion, see 83 F.(2d) 94.

Timothy A. Curtin, of Boston, Mass. (William J. Hession, of Boston, Mass., on the brief), for appellant.

Robert J. Rowe, of Boston, Mass., for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

The record in this case has now been corrected and it has been argued and submitted on the merits. It is an action on a policy of war risk insurance. In the District Court a verdict was returned for the plaintiff; and the United States has appealed. We shall refer to the parties, plaintiff and defendant, as they appeared in the trial court. Only one question is presented, whether on all the evidence the United States was entitled to a directed verdict.

Hall enlisted in the United States Army in 1918 and took out war risk insurance. He was discharged on March 7, 1919, and his policy lapsed on April 30, 1919. He claims that he was on that date totally and permanently disabled; that he was totally disabled because he was unable to follow continuously any substantially gainful occupation. It devolved upon him to present evidence warranting findings that these were the facts. At the time of his discharge he stated that he was not suffering from the effects of any wound, injury, or disease, and had no disability. The examining surgeon certified that he found Hall "physically and mentally sound." One month later Hall went to work on a farm doing hard, heavy work, and he continued in that employment until the following January, about nine months. On February 18, 1920, he went to work in Morrison, Ill., the kind of work is not stated, and kept at it until about October 1st of that year. He returned to New England and next worked in January, 1921, in a sawmill in Vermont where he stayed a month or two. About May 1st in that year he obtained employment as a chauffeur, which was ended about a month later by an attack of illness, pains in the back and chest and gall stones, for which he was treated in a hospital. He did no work the rest of that year because, as he testified, he was unable to do so on account of pains in his back and chest. In March, 1922, he again went to work as a chauffeur for another employer. While holding that position, he slipped on some stairs and injured his back so severely that he had to go to a hospital. On leaving the hospital he returned to the same employment and worked steadily at it until about October 1st. He did no work during the rest of the fall, winter, and early spring, testifying that he was physically unable to do so. During the following summer he worked at the State College until about October 1st. Since 1923 he has not been employed and says that he has been unable to work on account of pain in his back.

He first consulted a physician some time early in March, 1920, nearly a year after his discharge, when, as he says, "I *began to suffer* (italics supplied) from pains in my chest and back." "I have not worked regularly since March, 1920." The physician who attended Hall for the fall on the stairs in 1922 testified that he could find nothing the matter with Hall's back or spine at that time. In 1926 Hall said, in his testimony before the Board of Appeals in the Veterans' Bureau on a claim for compensation, "*and of course I was all right when I was discharged.*" In his testimony in the present case he said that statement was correct. A diagnosis of arthritis of the spine was made in 1923 and by 1925 Hall was totally and permanently disabled by it. Arthritis of the spine of the type from which Hall is suffering (Osteo-Arthritis) is said to be a disease of obscure onset and slow development. Once established it is progressive and very serious. It is believed by some medical experts to be caused by some infection. Hall testified that he had an attack of the "flu" in the army and suffered from sleeping in damp quarters and in tents in wet weather; that he began to have pains in the back about that time; and that after he left the army he never was free from them for any length of time. Physicians who testified on his behalf expressed a rather doubtful opinion that the beginning of Hall's arthritis might go back to the "flu" infection of 1918.

The issue in the present case is not when the disease began, but when it had pro-

gressed so far that Hall was totally incapacitated by it. That that stage had not been reached on the date when the policy lapsed is too clear for any reasonable finding to the contrary. Hall himself said, as has been noticed, that he was all right when he was discharged from the army and that he did not consult a physician until nearly a year afterwards. During nine months of that year he did hard, heavy work. No trace of arthritis was discovered until 1923, about a year after the injury to his back from the fall on the stairs. There was evidence that such a fall might exacerbate and speed up the disease.

The law of these cases is well settled. There is no occasion to discuss or restate it. As has been said, it devolves upon the plaintiff to present evidence that he was in fact totally and permanently disabled while the policy was still in force. There was no evidence warranting such a conclusion in this case. United States v. Spaulding, 293 U.S. 498, 55 S.Ct. 273, 79 L.Ed. 617; Miller v. United States, 294 U.S. 435, 55 S.Ct. 440, 79 L.Ed. 977.

As action by the District Court on the defendant's motion for a directed verdict was not reserved (Baltimore & Carolina Line v. Redman, 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636) and the verdict was not taken in an alternative form (Automatic Pencil Sharpener Co. v. Boston Pencil Pointer Co. [C.C.A.] 279 F. 40), the case must go back for a new trial.

Judgment reversed, new trial ordered.

The judgment of the District Court is reversed, the verdict is set aside, and the case is remanded to that court for further proceedings not inconsistent with this opinion.