## DOLBLESTIS v. UNITED STATES.
### No. 6687.

Circuit Court of Appeals, Seventh Circuit.
Feb. 3, 1939.

Rehearing Denied March 22, 1939.

Edward H. S. Martin and John B. King, both of Chicago, Ill., for appellant.

Julius C. Martin, Director, Bureau of War Risk Litigation, of Washington, D. C., Fendall Marbury, Sp. Asst. to Atty. Gen., and Michael L. Igoe, U. S. Atty., and William M. Lytle, Atty., Department of Justice, both of Chicago, Ill., and Young M. Smith, of Washington, D. C., for the United States.

Before EVANS, SPARKS, and TREANOR, Circuit Judges.

SPARKS, Circuit Judge.

This is an appeal from a judgment on a verdict directed in favor of the Government in a suit to recover under a policy of war risk insurance. Appellant assigns as error the directing of the verdict and the exclusion of certain lay evidence offered by him as to his inability to work and his inability to follow his prewar occupation.

Appellant was drafted into the military service April 25, 1918, and honorably discharged therefrom January 13, 1919. Over twelve years later, on June 27, 1931, he filed a claim for benefits under a $10,000 war risk insurance policy which expired March 3, 1919, unless prior to that date it

matured by reason of appellant's total and permanent disability, as he alleged, resulting from the following ailments and diseases: Arthritis; heart trouble; pes planus (flat foot); psychoneurosis; neurasthenia; varicose veins in both legs; rheumatism; hallux valgus (bunion); anterior metatarsalgia; general weakness and general disability.

Since the case comes to us on the direction of a verdict, we have before us only the question whether or not there was any substantial evidence admitted or offered which would have warranted a verdict in appellant's favor.

Appellant introduced two medical witnesses, both of whom had examined him for the first time in the latter part of 1935. One testified that appellant walked with a slight limp and looked as if he were suffering from an arthritic condition; that he found his heart and lungs negative; that there were conditions of overgrowth of the metatarsal bones; that he found no swelling of the ankles. The second, not a specialist in heart diseases, testified that he found that appellant had an old myocarditis and endocarditis, both severe; that he had swelling in his ankles which he attributed to the heart condition; that he tired very easily, but that his heart condition was compensated; that his activities were limited, but the witness "could not say if he could go around if he took care of himself and engaged in normal light activities." Here, surely, is no picture of a man physically incapacitated from doing any kind of work. Neither physician testified as to the psychoneurosis or neurasthenia included in appellant's specification of ailments.

Appellant introduced his own and the evidence of five other lay witnesses to sustain the burden of proof that his condition was such, and had been such since the time of his discharge from the service, as to render him unable to perform any kind of gainful occupation. At most this evidence goes merely to prove that he was unable to pursue his prewar occupation, that of candymaker, which, of course, required that he be on his feet a great deal. Such proof is not sufficient to establish the total and permanent character of his disability. Lumbra v. United States, 290 U.S. 551, 54 S.Ct. 272, 78 L.Ed. 492; Miller v. United States, 294 U.S. 435, 55 S.Ct. 440, 79 L.Ed. 977. As in the latter case, it did not appear that appellant made any effort to fit himself for other work; in fact, a letter introduced by appellee shows that appellant refused to avail himself of the offer of the Government of vocational training, stating as a reason that he wanted compensation because more than ten per cent disabled. Appellant seeks to excuse this by pointing to certain reports introduced by the Government which do state that at the time of such reports, vocational training was not feasible. However, there are other reports at other times which state that such training was feasible, and, if so, it was appellant's duty to avail himself of the opportunity of learning some other occupation, if any, for which his disabilities did not unfit him. True, the opportunities open to him may have been limited—the proof showed that he was a native of Greece who had not come to this country until he was seventeen years old, and that he did not read or write the English language. Even such a handicap, coupled with his inability to be on his feet for any length of time, would not necessarily render him unable to follow any gainful occupation. Under these circumstances, to prove total, permanent disability, he must have shown an attempt on his part to find other work or to be trained for other work, in addition to his submitted proofs of inability to follow his former work. The strongest proof in the record does not show that on and prior to March 3, 1919, appellant was totally and permanently disabled from following any kind of gainful occupation.

In this view of the case, we cannot say that the court committed error in striking two assertions of a lay witness that appellant was not able to work, and in excluding testimony of the same witness as to his inability to follow his prewar occupation. There was ample evidence to permit the jury to find that appellant did not work for longer than a few weeks at a time, and that each time he did try to, he was compelled to quit because he could not stay on his feet as required by the particular type of work he was still attempting to follow. Such evidence was not sufficient to permit a jury to find that appellant was totally and permanently disabled within the meaning of the contract of insurance, prior to March 3, 1919, hence the court was not in error in directing the jury to return its verdict in favor of the Government.

Judgment affirmed.