**GENERAL ELECTRIC COMPANY, Plaintiff-Appellant,**

v.

**Melvin J. BURTON, District Director of Internal Revenue, Defendant-Appellee.**

**No. 16780.**

United States Court of Appeals
Sixth Circuit.

Feb. 3, 1967.

---

6. At oral argument, counsel for defendants stated that they would be satisfied with this disposition.

James C. Davis, Cleveland, Ohio (Squire, Sanders & Dempsey, Cleveland, Ohio, Walter H. Beaman, Jr., Associate Tax Counsel, General Electric Co., New York City, on the brief), for appellant.

Robert I. Waxman, Atty., Dept. of Justice, Washington, D. C. (Richard M. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Howard J. Feldman, Attys., Dept. of Justice, Washington, D. C., on the brief; Merle M. McCurdy, U. S. Atty., Cleveland, Ohio, of counsel), for appellee.

Before WEICK, Chief Judge, and PHILLIPS and PECK, Circuit Judges.

JOHN W. PECK, Circuit Judge.

Section 4131 of the Internal Revenue Code of 1954 (26 U.S.C. § 4131), with which the single issue presented on this appeal is concerned, reads in its entirety as follows:

"There is hereby imposed upon the sale by the manufacturer, producer, or importer of electric light bulbs and tubes, not including articles taxable under any other provision of this chapter, a tax equivalent to 10 percent of the price for which so sold."

Plaintiff-appellant (hereinafter referred to as "Taxpayer") paid the 10% excise tax provided by this section for the second calendar quarter of 1962 on its sales of a product known as an EL lamp, and filed a timely refund claim for the tax so paid. Upon the rejection of that claim Taxpayer brought this suit seeking repayment of the tax with interest.

The EL lamp manufactured and sold by Taxpayer has the outward appearance of a flexible sheet of plastic about ⅟₆₄th of an inch thick. Actually, it is not one but a lamination of six sheets or layers, the two external sheets being composed of a clear plastic and serving only as a protection for the four internal layers forming the operative portion of the lamp. One of these is of aluminum foil and another a transparent conductive plastic, separated by an insulating plastic layer which is either coated with or impregnated with a phosphor. The transparent conductive plastic is overlaid by a thin sheet of clear nylon. The six layers are bonded together by the application of heat and pressure, with the outer layers extending about an eighth of an inch beyond the others to permit effective sealing.

Two copper electric terminals protrude from the border of the lamp and are attached to the two conductive layers of the laminate. Supplying standard 120 volt alternating current to these terminals causes the phosphor to become sufficiently energized to result in its radiating visible light, which may be green, yellow, blue or white, depending on the color of the phosphor. The EL lamp is square or rectangular in shape, exhibits and testimony received at trial indicating examples ranging from a two inch square to a one by thirty foot rectangle. While the lamp has a diversity of illuminating and decorative uses, it is best known to the general public as the light source of many night-lights.

The first issue suggested by a consideration of the EL lamp and the section is whether it falls within the contemplation of the statutory phrase "light bulb or tube." With reference to this point the district judge in his memorandum opinion said, "While the Court is of the belief that the EL lamp is not a 'light bulb or tube,' as that term is commonly used, that is not determinative of the issue in this action." Both parties to this appeal in their briefs and oral argument regarded this language as constituting a finding of fact and as having removed the issue as to whether the EL light was such a light bulb or tube from consideration, since such a finding could not seriously be claimed to be "clearly erroneous." Accordingly, we will here similarly construe the District Court's language and similarly conclude that issue not be presented on the present record.

Apparently the Department of the Treasury had earlier reached the conclusion that the EL lamp is not an electric light bulb or tube within the meaning of Section 4131 because a regulation was later promulgated which can only be regarded as substantially broadening the terms of the statute. That Regulation reads in pertinent part as follows (Treasury Regulations, 48.4131–2):

"*Definitions.*—For purposes of the tax imposed by section 4131, unless otherwise expressly indicated, the term 'electric light bulbs and tubes' includes any devise designed for the diffusion of artificial light for illuminative or decorative purposes through the use of electricity. * * *"

After reference to this language the district judge stated, "The question to be determined by the Court in this case is whether the EL lamp falls within the scope of the regulation, and whether the regulation is valid." Again, it cannot seriously be contended that his conclusion that the lamp falls within the scope of the regulation is "clearly erroneous," and we therefore pass to the question of the validity of the regulation. It is the sole issue presented by this appeal.

The scant legislative history on the antecedents of Section 4131 discloses that the tax was initially proposed by the Senate as an addition to the Revenue Bill of 1941 as formulated by the House, and was a tax on "electric light bulbs." (S. Rep. No. 673, Part 1, p. 53, 77th Cong., 1st Sess. (1941–2 Cum.Bull. p. 506)). The Conference Committee Report states:

"Amendment No. 118: This amendment imposes a 10 per cent manufacturers' excise tax on electric light bulbs. The House recedes with an amendment excluding articles otherwise taxable, reducing the tax to 5 per cent, and making it clear that the tax applies to electric light tubes." H.Conf.Rep. No. 1203, p. 16, 77th Cong., 1st Sess. (1941–2 Cum.Bull. 516).

After commenting on the enactment of the Section and its legislative history, the District Court found as facts that "the widely known commercial electric light sources were in the shape of bulbs and tubes, and while the principles of electroluminescence were known, they had not been utilized in any significant commercial developments as of 1941." The district judge then went on to point out that the Conference Committee addition to the Senate language was inserted to make it clear that the tax applied to electric light tubes, from which he concluded that the amendment was not for the purpose of adding tubes to the statute or to limit it to such, the addition being "intended to include bulbs and tubes, the electric light sources *then known.* * * *" (Emphasis supplied.) Following this reasoning and the facts as found, in apposition to the determination reached by the District Court, we can only conclude that the Department of the Treasury added a light source not included in those named in the statute, and not "then known," to Section 4131.

 It is well established that a statute may not be broadened by administrative action to cover areas never intended to be reached (or articles never intended to be taxed) by Congress, and not even within the area of Congressional knowledge at the time of the enactment. In Miller v. United States, 294 U.S. 435, 55 S.Ct. 440, 79 L.Ed. 977 (1935), the validity of a regulation adopted by an administrative agency of the Federal Government was, as here, at issue. There the statute permitted the agency authorized to administer the problems of War Risk Insurance "to make such rules and regulations, not inconsistent with the provisions of the act, as may be necessary or appropriate to carry out its purposes." With reference to such a regulation, the Supreme Court said (pp. 439, 440, 55 S.Ct. p. 442):

"It is invalid because not within the authority conferred by the statute upon the Director (or his successor, the Administrator) to make regulations to carry out the purposes of the act. It is not, in the sense of the statute, a regulation at all, but legislation.

* * * The only authority conferred, or which could be conferred, by the statute is to make regulations to carry out the purposes of the act—not to amend it."

To add to the list of items mentioned in Section 4131 a light source found by the trial judge as a matter of fact not to have been included among the items taxed under the statute would clearly be to permit amendment of that statute, or, alternatively, to permit an administrative agency to legislate. Neither is permissible under Miller v. United States, supra.

Where a Treasury Regulation extended the scope of a statute, this Court said,

"Petitioner points out that with the approval of the Secretary of the Treasury he promulgated amended regulations to the effect that § 270 applies to all tax years ending prior to the enactment of § 270, or the Chandler Act; but it is needless to say that what Congress did not do by positive enactment petitioner cannot do by regulations. Such regulations cannot amend the law. Miller v. United States, 294 U.S. 435. [55 S.Ct. 440, 79 L.Ed. 977] * * *" (Comm. of Internal Revenue v. Commodore, Inc., 135 F.2d 89, 92 (6th Cir. 1943)).

In Arkansas-Oklahoma Gas Co. v. Comm. of Internal Revenue, 201 F.2d 98 (8th Cir. 1953), the Court made this observation (p. 102):

"The Commissioner has no more power to add to the Act what he thinks Congress may have overlooked than he has to supply what Congress has deliberately omitted."

See also Northern Natural Gas Co. v. O'Malley, 277 F.2d 128 (8th Cir. 1960), citing Helvering v. Oregon Mutual Life Ins. Co., 311 U.S. 267, 61 S.Ct. 207, 85 L.Ed. 180 (1940); Koshland v. Helvering, 298 U.S. 441, 56 S.Ct. 767, 80 L.Ed. 1268 (1936); Helvering v. Northwestern National Bank & Trust Co., 89 F.2d 553 (8th Cir. 1937); Slough v. Comm., 147 F.2d 836 (6th Cir. 1945); Busey v. Deshler Hotel Co., 130 F.2d 187 (6th Cir. 1942), 142 A.L.R. 563. Also cited with approval is the general rule as set forth in Mertens, Law of Federal Income Taxation, Vol. I, § 3.21: "The Treasury may not make an arbitrary or unreasonable Regulation, nor can it restrict or enlarge the scope of a statute."

In accordance with the foregoing, the judgment of the District Court is reversed and the cause remanded with instructions to enter judgment for the plaintiff-appellant as prayed for in the complaint.