TAYLOR DIVING & SALVAGE CO., INC., et al., Petitioners,

v.

U. S. DEPARTMENT OF LABOR, F. Ray Marshall, Secretary of Labor, and Eula Bingham, Assistant Secretary of Labor for Occupational Safety and Health, Respondents.

No. 77–2875.

United States Court of Appeals, Fifth Circuit.

July 16, 1979.

Stanley R. Strauss, Michael J. Bartlett, Dixie L. Atwater, Washington, D. C., Michael J. Molony, Jr., New Orleans, La., for petitioner.

W. Scott Railton, Washington, D. C., for Chamber of Commerce, amici curiae.

W. William Ament, Reston, Va., for Occupational Safety & Health Group, Organization Resources Counselors, Inc., amici curiae.

Nathaniel I. Spiller, Edward A. Klein, Atty., Dept. of Labor, Washington, D. C., for respondents.

Before JONES, AINSWORTH and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

In this case we examine the validity of three provisions of the commercial diving health standard[1] promulgated by the Occupational Safety and Health Administration of the Department of Labor (OSHA), pursuant to the Occupational Safety and Health Act of 1970, 29 U.S.C.A. §§ 651–678 (1975) (the Act). The petitioning companies, all members of the petitioning Association of Diving Contractors (ADC) who are engaged in commercial diving operations in waters in and adjacent to the United States, attack the medical examination procedure and cost allocation required by § 1910.411 of the diving standard and the employee-access-to-records provision in § 1910.440(b)(2) of the regulation. Sections 1910.411 and 1910.440(b)(2) are set out in full in an appendix to this opinion. Section 1910.411 places upon employers the obligation to determine that divers who are, or are likely to be, exposed to hyperbaric conditions are medically fit to perform assigned tasks in a safe and healthful manner. Employers are required to provide each such employee with a comprehensive medical examination prior to initial hyperbaric exposure with the employer, unless an equivalent evaluation has been made within the preceding year, and yearly thereafter. The mandatory medical examination is the first step of what may, at the employee's option, develop into a three-tiered medical assessment procedure, all levels of which must be financed by the employer. If the examining physician selected by the employer determines that the examinee is medically unfit to engage in diving activities, the examinee has the option of seeking the opinion of a second physician. If the opinion of the second physician differs from that of the initial examining physician, then a third opinion must be secured from a physician selected by the first two physicians. In such circumstances, the opinion of the third physician dictates the employer's final determination of the diver's medical fitness. That is, if the third physician finds the applicant medically fit for exposure to hyperbaric conditions, the employer must accept the applicant as medically qualified and would be barred by OSHA from declining to employ him on such grounds.

1. The standard is codified at 29 C.F.R. §§ 1910.-401–.441, and is also published, along with OSHA's statement of reasons in support of the standard, at 42 Fed.Reg. 37,650–74 (1977).

Because OSHA is without authority to so restrict the medical fitness determinations of employers, the petitions for review are granted with respect to § 1910.411.

Section 1910.440(b)(2) is challenged only with regard to the manner of its promulgation, in that the Secretary of Labor is claimed to have failed to meet the notice requirements of the Act prior to enacting that provision of the standard. The petitioners' challenge is without merit, however, and the petitions for review are denied with respect to § 1910.440(b)(2).

## I.

The petitioners first claim that the Secretary of Labor exceeded his statutory authority in promulgating § 1910.411, the medical requirements provisions of the standard. Basically, the petitioners object to § 1910.411 because it gives an employee the right to appeal an initial determination of medical unfitness for diving to a second, and possibly third, doctor until the first examining doctor's evaluation is either concurred in by the second doctor or overruled by the third. Also, the employer is required to pay for all medical examinations accorded under § 1910.411.

 The Secretary of Labor's authority to promulgate occupational safety and health standards [2] derives from § 655 of the Act, 29 U.S.C.A. The Act defines an "occupational safety and health standard" as "a standard which requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment." 29 U.S.C.A. § 652(8). Judicial review of occupational safety and health standards is authorized by 29 U.S.C.A. § 655(f), and "[t]he determinations of the Secretary shall be conclusive is supported by substantial evidence in the record considered as a whole." Another basic premise in our review of OSHA regulations is that the Secretary can only effec-

tuate the will of Congress as expressed in the Act.

The power of an administrative officer or board to administer a federal statute and to prescribe rules and regulations to that end is not the power to make law—for no such power can be delegated by Congress—but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity. *Lynch v. Tilden Produce Co.,* 265 U.S. 315, 320–322, 44 S.Ct. 488, 68 L.Ed. 1034; *Miller v. United States,* 294 U.S. 435, 439, 440, 55 S.Ct. 440, 79 L.Ed. 977 and cases cited.

*Manhattan General Equipment Co. v. Commissioner,* 297 U.S. 129, 134, 56 S.Ct. 397, 400, 80 L.Ed. 528 (1936). Judicial review of occupational safety and health standards must include "a review of whether the Secretary exercised his decisionmaking power within the limits imposed by Congress." *American Petroleum Institute v. OSHA,* 581 F.2d 493, 497 (5th Cir. 1978), *cert. granted,* —— U.S. ——, 99 S.Ct. 1212, 59 L.Ed.2d 453 (1979). "The Act imposes on OSHA the obligation to enact only standards that are reasonably necessary or appropriate to provide safe or healthful workplaces. If a standard does not fit in this definition, it is not one that OSHA is authorized to enact." *Id.* at 502.

 Our task, then, is to determine whether the medical examination procedure established by § 1910.411 is reasonably necessary or appropriate to provide safe or healthful working conditions in the commercial diving industry. In light of the Act's language and legislative history, the Secretary's admitted purpose for promulgating this standard, and the practical effect of the standard on the employer's hiring practices, we conclude that the Secretary was not authorized to enact § 1910.411.

---

2. This authority has been delegated to the Assistant Secretary of Labor for Occupational Safety and Health, the chief executive officer of OSHA. References to the Secretary and OSHA are used interchangeably in this opinion.

■ We look first to the language of the Act, 29 U.S.C.A. §§ 651–678, and its legislative history, [1970] U.S.Code Cong. & Admin.News, p. 5177, and we see that Congress created OSHA for the sole purpose of protecting the health and safety of workers and improving physical working conditions on employment premises. *Brennan v. OSHRC,* 488 F.2d 337, 338 (5th Cir. 1973); *see especially* 29 U.S.C.A. § 651. As we noted earlier, the Secretary is authorized to promulgate only regulations which are reasonably necessary or appropriate to achieve that Congressional goal.

In promulgating § 1910.411, however, OSHA's choice of medical examination procedures was controlled by its "cognizan[ce] of the employees' countervailing rights to be protected in their choice of occupation." 42 Fed.Reg. 37,650, 37,658 (1977). In its effort "not to create, through a health and safety standard, a situation which restricts entry into a profession or allows employees to be dismissed for a cause which is less than substantial," OSHA sought to achieve a "balance between the need for a mandatory medical examination and the employee's right to a thorough medical assessment." *Id.* In effect, § 1910.411 imposes upon employers a mandatory job security provision. OSHA is simply not authorized to regulate job security as it has done here.

The medical examination procedure established by OSHA provides that the fitness evaluation of the third doctor in the examining process controls the medical fitness determination of the employer. Thus, even though the employer may genuinely question the medical fitness of a particular employee, due to the first doctor's conclusion of medical unfitness, the employer's determination of medical fitness is conclusively determined by the third doctor's evaluation, which may be that the employee is medically fit. Furthermore, the employer has no control over the third doctor's fitness standards, so that the employer is prevented from setting higher health standards for employees than the secondary examining doctors choose to set.

While we commend OSHA for trying to avoid doing harm with regulations, we must condemn its efforts here because § 1910.411 invalidly binds employers in their determinations of employees' medical fitness. "When adopting OSHA, Congress deliberately sought to achieve job safety while maintaining proper employee-employer relations." *Marshall v. Daniel Construction Co.,* 563 F.2d 707, 716 (5th Cir. 1977), *cert. denied,* 439 U.S. 880, 99 S.Ct. 216, 58 L.Ed.2d 192 (1978).

■ The Secretary argues that consideration of and accounting for the economic impact of regulations is permissible when promulgating occupational safety and health standards.[3] We agree. Indeed, a regulation enacted in the single-minded pursuit of absolutely risk free workplaces regardless of cost or limitation of job opportunities might well be struck down; it would certainly be ill-advised. This Court has repudiated OSHA's use of such tunnel vision in an earlier opinion. *See American Petroleum Institute,* 581 F.2d at 502–03. Had OSHA limited the employment of commercial divers by prohibiting the hiring of those who fail to pass a medical examination and then, mindful of unfairly prohibiting a banned employee from obtaining employment, provided for a challenge of the initial determination without making the results of that challenge binding on the employer's employment decision, we would be faced with a different question on appeal. OSHA may arguably provide for a threshold determination of medical fitness, but OSHA may not impose a ceiling on the medical fitness standards used by employers in hiring divers. To countenance the Secretary's regulation here would countenance OSHA's imposing not only minimum standards of safety, but also *maximum* stan-

**3.** Previous cases which have approved the consideration of the economic effect of OSHA regulations have focused on the economic feasibility of a standard with regard to the employer's cost in meeting its requirements. *See AFL–CIO v. Brennan,* 530 F.2d 109, 122–23 (3d Cir. 1975); *Industrial Union Department, AFL–CIO v. Hodgson,* 162 U.S.App.D.C. 331, 499 F.2d 467 (1974).

dards which employers would be allowed to impose upon themselves.[4] No such Congressional intent is to be found in the Act. Section 1910.411 is thus vacated.[5]

## II.

■ The Secretary made an impressive argument concerning the employers' obligation to bear the cost of medical examinations. We decline, however, to pass upon what would be the case were we presented a valid regulation. Section 1910.411 having been set aside as an attempt by OSHA to exceed its authority, the issue of cost allocation of the medical examinations provided thereunder is mooted.

## III.

The petitioners' final attack on the commercial diving health standard concerns the employee-access-to-records provision in § 1910.440(b)(2) of the regulation. Section 1910.440(b)(2) requires that any employee, former employee, or authorized representative be given access to the employer's records or documents which are required by the standard and pertain to the individual employee or former employee. The petitioners argue that § 1910.440(b)(2) is invalid because the Secretary, in promulgating the provision, failed to satisfy the notice provision of the Act, thereby prejudicing petitioners and other diving contractor-employers.

■ The Act provides that proposed rules and regulations be published in the Federal Register and that interested persons be afforded an opportunity to comment upon, and request a hearing with regard to, any proposed regulation. 29 U.S.C.A. § 655(b)(2)-(3). It is not necessary, however, for the final form of a regulation to be republished under § 655(b)(2)-(3) where the proposed regulation, in its initial form, gives sufficient notice to the interested parties of the Secretary's intentions. See *GAF Corp. v. OSHRC,* 183 U.S.App. D.C. 20, 25-26, 561 F.2d 913, 918-19 (1977); *South Terminal Corp. v. E.P.A.,* 504 F.2d 646, 659 (1st Cir. 1974); *International Harvester Co. v. Ruckelshaus,* 155 U.S.App.D.C. 411, 428, 478 F.2d 615, 632 (1973). Here, as in *GAF Corp.,* the contested provision in the standard finally promulgated was a logical outgrowth of provisions found in the standard originally proposed. *Compare* Proposed Rules, 41 Fed.Reg. 48. 950-69 (1976) *with* Rules and Regulations, 42 Fed.Reg. 37,650-74 (1977).

We are concerned in this case, of course, only with whether § 1910.440(b)(2) was properly promulgated, and we find that it was. We are not faced with the question of whether a particular record or document can be gained under this provision, and we do not purport to decide that question.

## Conclusion

In summary, we hold that the Secretary's promulgation of § 1910.411 of the commercial diving standard was in excess of his statutory authority and is therefore vacated, and that the Secretary's promulgation of § 1910.440(b)(2) was proper under 29 U.S.C.A. § 655(b)(2)-(3). The petitions for review are, therefore, granted with regard to § 1910.411 and denied with respect to § 1910.440(b)(2).

PETITIONS FOR REVIEW GRANTED IN PART AND DENIED IN PART.

## APPENDIX

Section 1910.411 provides:
**Medical requirements.**

---

**4.** In an analogous situation, out of concern for the economic opportunities of suppliers of tools, OSHA might require certain safety designs of the tools and also require employers to purchase and use tools meeting those standards, even though the employer might have concluded that higher standards are desirable for the tools to be used by its employees.

**5.** Our conclusion that employers' maximum safety standards may not be limited by OSHA does not, of course, mean that an employer's maximum safety standards are never subject to outside limitation. The unwarranted exclusion from employment of applicants or former employees might well be limited through labor-management relations or some other appropriate avenue. We merely find that OSHA is an inappropriate authority for such regulation.

(a) *General.* (1) The employer shall determine that dive team members who are, or are likely to be, exposed to hyperbaric conditions are medically fit to perform assigned tasks in a safe and healthful manner.

(2) The employer shall provide each dive team member who is, or is likely to be, exposed to hyperbaric conditions with all medical examinations required by this standard.

(3) All medical examinations required by this standard shall be performed by, or under the direction of, a physician at no cost to the employee.

(b) *Frequency of medical examinations.* Medical examinations shall be provided:

(1) Prior to initial hyperbaric exposure with the employer, unless an equivalent medical examination has been given within the preceding 12 months and the employer has obtained the results of the examination and an opinion from the examining physician of the employee's medical fitness to dive or to be otherwise exposed to hyperbaric conditions;

(2) At one-year intervals from the date of initial examination or last equivalent examination; and

(3) After an injury or illness requiring hospitalization of more than twenty-four (24) hours.

(c) *Information provided to examining physician.* The employer shall provide the following information to the examining physician:

(1) A copy of the medical requirements of this standard; and

(2) A summary of the nature and extent of hyperbaric conditions to which the dive team member will be exposed, including diving modes and types of work to be assigned.

(d) *Content of medical examinations.* (1) Medical examinations conducted initially and annually shall consist of the following:

(i) Medical history;

(ii) Diving-related work history;

(iii) Basic physical examination;

(iv) The tests required by Table I; and

(v) Any additional tests the physician considers necessary.

(2) Medical examinations conducted after an injury or illness requiring hospitalization of more than 24 hours shall be appropriate to the nature and extent of the injury or illness as determined by the examining physician.

TABLE I.—*Tests for diving medical examination*

| Test | Initial examination | Annual reexamination |
| --- | --- | --- |
| Chest X-ray | X | |
| Visual acuity | X | X |
| Color blindness | X | |
| EKG: Standard 12L [1] | | |
| Hearing test | X | X |
| Hematocrit or hemoglobin | X | X |
| Sickle cell index | X | |
| White blood count | X | X |
| Urinalysis | X | X |

[1] To be given to the employee once, at age 35 or over.

(e) *Physician's written report.* (1) After any medical examination required by this standard, the employer shall obtain a written report prepared by the examining physician containing:

(i) The results of the medical examination; and

(ii) The examining physician's opinion of the employee's fitness to be exposed to hyperbaric conditions, including any recommended restrictions or limitations to such exposure (see Appendix B).

(2) The employer shall provide the employee with a copy of the physician's written report.

(f) *Determination of employee fitness.* (1) The employer shall determine the extent and nature of the dive team member's fitness to engage in diving or be otherwise exposed to hyperbaric conditions consistent with the recommendations in the examining physician's report.

(2) If the examining physician has recommended a restriction or limitation on the dive team member's exposure to hy-

perbaric conditions, and the affected employee does not concur, a second physician selected by the employee shall render a medical opinion on the nature and extent of the restriction or limitation, if any.

(3) If the recommendation of the second opinion differs from that of the examining (first) physician, and if the employer and employee are unable to agree on the nature and extent of the restriction or limitation, an opinion from a third physician selected by the first two physicians shall be obtained. The employer's determination of the dive team member's fitness shall be consistent with the medical opinion of the third physician, unless the employer and employee reach an agreement which is otherwise consistent with the recommendation or opinion of at least two of the physicians involved.

(4) Nothing in this procedure shall be construed to prohibit either a dive team member from accepting, or an employer from offering, an assignment which is otherwise consistent with at least one medical opinion while a final determination on the employee's fitness is pending.

Section 1910.440(b)(2) provides:

Upon request of any employee, former employee or authorized representative, the employer shall make available for inspection and copying any record or document required by this standard which pertains to the individual employee or former employee.