### ARKANSAS–OKLAHOMA GAS CO. v. COMMISSIONER OF INTERNAL REVENUE (two cases).

### Nos. 14635, 14636.

United States Court of Appeals
Eighth Circuit.

Jan. 20, 1953.

Harry P. Daily, Ft. Smith, Ark. (John P. Woods and J. S. Daily, Ft. Smith, Ark., were with him on the brief), for petitioner.

Harry Marselli, Sp. Asst. to the Atty. Gen. (Charles S. Lyon, Acting Asst. Atty. Gen., and Ellis N. Slack and Louise Foster, Sp. Assts. to the Atty. Gen., were on the brief), for respondent.

Before SANBORN, JOHNSEN, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

These petitions challenge decisions of the Tax Court affirming the Commissioner's determinations of deficiencies in the petitioner's income taxes for the years 1944 and 1945. The facts are stipulated. The sole question is one of statutory interpretation. It is whether, pursuant to section 124(a) of the Internal Revenue Code, the petitioner has the right to amortize and deduct intangible costs incurred in the development of three natural gas wells under a Necessity Certificate issued to petitioner pursuant to section 124(f). The Tax Court held that the taxpayer could not deduct any amount of the cost of developing the gas wells as amortization under section 124(a), but was entitled only to the deduction from gross income allowed by section 23(m) of the Code.

Section 23 of the Internal Revenue Code, 26 U.S.C., 1946 Ed., § 23, so far as material to decision here, provides:

"§ 23. *Deductions from gross income.* In computing net income there shall be allowed as deductions:

\*   \*   \*   \*   \*   \*

"(*l*) *Depreciation.* A reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

"(1) of property used in the trade or business, or

"(2) of property held for the production of income. \* \* \*.

"(m) *Depletion.* In the case of mines, oil and gas wells \* \* \* a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. \* \* \*

\*   \*   \*   \*   \*   \*

"(t) [as added by § 301 of the Second Revenue Act of 1940, 54 Stat. 974] *Amortization deduction.* The deduction for amortization provided in section 124."

Section 124, as originally enacted, provides:

"Sec. 124. *Amortization deduction.*

"(a) *General Rule.*—Every corporation, at its election, shall be entitled to a deduction with respect to the amortization of the adjusted basis of any emergency facility (as defined in subsection (e) ), based on a period of sixty months. Such amortization deduction shall be an amount, with respect to each month of such period within the taxable year, equal to the adjusted basis of the facility at the end of such month divided by the number of months (including the month for which the deduction is computed) remaining in the period. Such adjusted basis at the end of the month shall be computed without regard to the amortization deduction for such month. The amortization deduction above provided with respect to any month shall, except to the extent provided in subsection (g) of this section, be in lieu of the deduction with respect to such facility for such month provided by section 23(*l*), relating to exhaustion, wear and tear, and obsolescence. The sixty-month period shall begin as to any emergency facility, at the election of the taxpayer, with the month following the month in which the facility was completed or acquired, or with the succeeding taxable year.

\*   \*   \*   \*   \*   \*

"(e) *Definitions.*—

"(1) *Emergency facility.*—As used in this section, the term 'emergency facility' means any facility, land, building, machinery, or equipment, or part thereof, the construction, reconstruction, erection, or installation of which was completed after June 10, 1940, or which was acquired after such date, and with respect to which a certificate under subsection (f) has been made.

"(2) *Emergency period.*—As used in this section, the term 'emergency period' means the period beginning June 10, 1940, and ending on the date on which the President proclaims that the utilization of a substantial portion of the emergency facilities with respect to which certifications under subsection (f) have been made, is no longer required in the interest of national defense.

"(f) *Determination of Adjusted Basis of Emergency Facility.*—In determining, for the purposes of subsection (a) or subsection (h), the adjusted basis of an emergency facility—

"(1) There shall be included only so much of the amount otherwise constituting such adjusted basis as is properly attributable to such construction, reconstruction, erection, installation, or acquisition after June 10, 1940, as the Advisory Commission to the Council of National Defense and either the Secretary of War or the Secretary of the Navy have certified, within the

time specified in paragraph (3) of this subsection, and under such regulations as the President may prescribe, as necessary in the interest of national defense during the emergency period * * *.

\* \* \* \* \* \*

"(g) *Depreciation Deduction.*—If the adjusted basis of the emergency facility computed without regard to subsection (f) of this section is in excess of the adjusted basis computed under such subsection, the deduction provided by section 23*(l)* shall, despite the provisions of subsection (a) of this section, be allowed with respect to such emergency facility as if its adjusted basis were an amount equal to the amount of such excess."

Subsections (b), (c), and (d) of section 124 provide for the manner of a taxpayer's election to take the amortization deduction, for his termination of the amortization election, and for the termination of the amortization period.

Subsection (f) (1) of section 124 was amended by the Act of Congress of October 30, 1941, to provide that the issuance of Necessity Certificates "shall be under such regulations as may be prescribed from time to time by the Secretary of War and the Secretary of the Navy, with the approval of the President." Subsections (a), (e), and (f) of section 124 were amended by the Revenue Act of 1942 in respects not material here.

The petitioner, Arkansas-Oklahoma Gas Company, a corporation with its principal place of business in Fort Smith, Arkansas, is engaged in the production, transportation, and distribution of natural gas in adjoining counties in Arkansas and Oklahoma. It is the owner and holder of a Necessity Certificate issued by the Secretary of War and the Advisory Commission to the Council of National Defense under date of May 28, 1941, certifying that the facilities therein described were necessary in the interests of national defense during the emergency period up to 100 per cent of the cost attributable to their construction, reconstruction, erection, installation, or acquisition.

The facilities described in the Necessity Certificate were six natural gas wells to be drilled on leaseholds owned or to be acquired by the applicant in LeFlore County, Oklahoma, each well to be drilled to the depth of 5400 feet and equipped with casing at an estimated total cost for all six wells of $209,352.00, the cost to include the expense of drilling, equipping, and shutting in the wells, and the expense of obtaining mineral rights or gas leases; and the construction of a natural gas transmission pipe for a distance of 20.5 miles from the Spiro Field in LeFlore County, Oklahoma, to South Fort Smith, Arkansas, according to the specifications set out in the Necessity Certificate at an estimated cost of $179,278.00. Subsequently, the Certificate was amended to show the actual cost of $214,167.14 for the six gas wells and for the transmission pipeline a cost of $178,041.15. The facilities covered by the Necessity Certificate were acquired and completed by the petitioner in the latter part of the year 1941. The petitioner elected to take the amortization deduction for the facilities covered by the Certificate and to begin the 60-month period of amortization on January 1, 1942. Later, the petitioner filed its election under section 124(d) of the Internal Revenue Code to terminate the amortization period with respect to the emergency facilities as of the end of the month in which the President of the United States proclaimed the end of the emergency period as defined in the section, September 30, 1945. It is admitted that the Necessity Certificate correctly shows the actual cost of the described facilities.

For the years 1942 and 1943 petitioner's claims for amortization were allowed by the Commissioner and have become final. For the years 1944 and 1945 the petitioner's claims for amortization in respect to three of the wells were denied by the Commissioner. For these years no amortization was claimed by the petitioner for three of the wells and as to these wells no controversy arises. For the years in controversy the Commissioner disallowed petitioner's claims for amortization on three of the wells on the ground that the amor-

tization deduction provided in section 124(a) is not allowable in respect to intangible drilling and development costs of gas wells, the Commissioner holding that these costs were recoverable only by the deductions for depletion allowable under section 23(m) of the Internal Revenue Code. The Tax Court affirmed.

Both the Commissioner and the Tax Court base their interpretation of section 124 upon one sentence in subsection (a) which provides that the amortization deduction provided in section 124 shall be in lieu of the deduction allowed by section 23(*l*) of the Act relating to exhaustion, wear and tear, and obsolescence. This emphasis upon one sentence of section 124, lifted out of context, overlooks the words of the Act read as a whole, and completely ignores its purpose. Compare Federal Deposit Ins. Corp. v. Tremaine, 2 Cir., 133 F.2d 827; Cabell v. Markham, 2 Cir., 148 F.2d 737; Brooklyn National Corp. v. Commissioner, 2 Cir., 157 F.2d 450; Markham v. Cabell, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165. Both subsections (*l*) and (m) of section 23 provide for a deduction from gross income for depreciation of improvements and tangible property used in trade or business. In the case of gas wells, section 23(m) also allows a reasonable deduction for depletion. The distinction between depreciation and depletion is that the first relates to the usable life of tangible property, and the second to the exhaustion of a natural resource. Choate v. Commissioner, 324 U.S. 1, 3, 65 S.Ct. 469, 89 L.Ed. 653. But, for practical purposes, depreciation and amortization, as used in the section, may be regarded as essentially the same, amortization being merely an accelerated depreciation. That Congress had this in mind appears from the testimony in Congressional Hearings.[1] Since Congress was granting for emergency facilities an accelerated depreciation not otherwise available to a taxpayer, it quite naturally provided that the acceleration privilege was in lieu of the allowance for depreciation at the usual rate. To give another meaning to the sentence upon which the Tax Court bases its opinion is to read something into the Act which is not there. The Commissioner has no more power to add to the Act what he thinks Congress may have overlooked than he has to supply what Congress has deliberately omitted. The conclusive presumption is that Congress is familiar with all the deductions from income taxes mentioned in section 23 and with all of them in mind meant exactly what it has said.

Moreover, Congress in the enactment of section 124 was not concerned with the problems incident to the allowance from gross income of either depreciation or depletion for tax purposes. It was solely concerned with national defense in a period of emergency. Its purpose was to induce the immediate and large investment of private capital in the acquisition and construction of facilities for the production of materials vitally necessary to national defense. That this was the purpose of Congress in the enactment of section 124 is shown by the legislative history of the section which the Tax Court quotes and discusses at some length in its opinion. 17 T.C. 1208. Section 124 is remedial and must be read in the light of the purpose of Congress. Corona Coal Co. v. United States, D.C., 21 F.2d 489, af-

1. Joint Hearings, Excess Profits Taxation, 1940, 76th Cong., 3d Sess. pp. 21, 26.

    "Statement of Hon. Henry L. Stimson, Secretary of War.

    \*   \*   \*   \*   \*   \*   \*

    "Mr. McCormack. What amortization really is, is accelerated depreciation.

    "Secretary Stimson. Accelerated depreciation; yes.

    "Mr. McCormack. Because we have a basic policy in tax matters of allowing reasonable depreciation, except to cover emergencies where you have a program such as this, where expansion is necessary and that reasonable depreciation would have to be accelerated over what ordinary business activities would justify in normal times.

    "Secretary Stimson. If a man is obliged to build a factory which he can only use in the emergency, such as we are now in, and is only allowed the amortization over a period, we will say, of 20 years, then if the emergency ceases in 3 or 4 or 5 years he is in trouble."

firmed United States v. Corona, 5 Cir., 23 F.2d 673. It is not to be interpreted as if Congress was dealing with the public revenue in tranquil times, concerned only with the question of reasonable allowances for deductions from gross income.

 The first sentence of section 124(a) grants the right to amortize the adjusted basis of an emergency facility to every holder of a Necessity Certificate without limitation or qualification. An emergency facility is defined by section 124(e) as "Any facility, land, building, machinery, or equipment, or part thereof," the construction, reconstruction, erection, installation, or acquisition of which was accomplished within stated time limits and with respect to which a Necessity Certificate has been issued. The legislative definition of "emergency facility" leaves no room for administrative limitation by interpretation or construction. It is as broad as words can make it. The inclusion of "land" in the definition clearly implies the right to include in the adjusted basis of an emergency facility and to amortize an authorized investment in land, as well as the authorized expense necessary for its acquisition and development for utilization for the purpose for which the Necessity Certificate is made, in this case, the production of natural gas.

By section 124(f) the Advisory Commission to the Council of National Defense and the Secretary of War are granted the exclusive power to determine what part, if any, of the cost of acquisition is includible in the adjusted basis of a facility for which the Necessity Certificate is issued, subject only to such regulations as may be prescribed by the Secretary with the approval of the President. This determination is not reviewable by the courts. A Necessity Certificate made by the Advisory Council and the Secretary of War conclusively determines not only the necessity for the described facility and for the material to be produced by it for the national defense, but also the percentage of cost of acquisition includible in the adjusted basis of the facility for the purpose of amortization.

At the time the Necessity Certificate held by petitioner was made no regulations governing the action of the Advisory Council and the Secretary of War had been issued. In the following year the prescribed regulations provided that:

"(1) Depreciable Assets—With the exception of land, facilities will not be certified unless they are subject to the deduction provided by section 23(l) of the Internal Revenue Code.

"(2) Land will not be certified as necessary unless directly related to the production, storage, transportation or protection of supplies required in the interest of national defense.

\* \* \* \* \* \*

"(8) Necessity Certificates Previously Issued.—All Necessity Certificates issued by the certifying authority prior to the effective date of these regulations are hereby ratified and confirmed."

We are unable to find any support for the Tax Court decision in the regulations quoted. On the contrary, paragraph (8) expressly ratifies and confirms all prior certificates conclusively showing that the regulations were intended to apply only to Necessity Certificates issued after their adoption.

Reversed and remanded to the Tax Court for further proceedings in conformity with this opinion.